UNITED STATES of America, Plaintiff–Appellant,

v.

Darren J. CUSTIS, Defendant–Appellee.

UNITED STATES of America, Plaintiff–Appellee,

v.

Darren J. CUSTIS, Defendant–Appellant.

Nos. 92–5211, 92–5212.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1992.

Decided March 22, 1993.

Order Denying Rehearing and Rehearing En Banc April 30, 1993.

Thomas Michael DeBiagio, Asst. U.S. Atty., Baltimore, MD (Richard D. Bennett, U.S. Atty., Robert E. Sims, Asst. U.S. Atty., on brief), for appellant.

Mary Melissa French, Asst. Federal Public Defender, Baltimore, MD (Anthony R. Gallagher, Acting Federal Public Defender, on brief), for appellee.

Before RUSSELL and WILKINSON, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

WILKINSON, Circuit Judge:

In this case, Darren Custis claims (1) that he is entitled to a new trial on the basis of newly discovered impeaching evidence; (2) that he is entitled to have the constitutionality of several predicate state convictions considered in his federal sentencing proceeding; and (3) that his prior conviction for attempted breaking and entering should not have been defined as a violent felony for purposes of the sentencing enhancement under 18 U.S.C. § 924(e). For the reasons that follow, we reverse the district court's granting of a new trial and remand this case with instructions to reinstate the judgment of conviction. We find no error, however, in that court's treatment of the defendant's predicate state convictions, nor in its determination that defendant was eligible for sentence enhancement as an armed career criminal. We thus affirm the sentence imposed upon defendant.

## I.

Darren Custis was arrested on July 1, 1991 by Baltimore City Police Officers Christopher Wade and John Mohr. Pursuant to "Operation Triggerlock," a federal effort to crack down on the use of firearms by convicted felons, Custis was indicted by a federal grand jury on three counts: (1) possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); (2) use of a firearm in connection with a drug trafficking offense in violation of 18 U.S.C. § 924(c); and (3) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The government gave notice that it would seek an enhanced penalty for the section 922(g)(1) offense under 18 U.S.C. § 924(e)(1), which provides for a minimum fifteen-year sentence for defendants who have three prior convictions for a violent felony or a serious drug offense. The notice listed state convictions for burglary, attempted burglary, and robbery as predicate offenses for the sentence enhancement.

At trial, three Baltimore City Police Officers testified on behalf of the government: the arresting officers, Christopher Wade and John Mohr, and an officer who interviewed Custis the morning after his arrest, Louis Hopson. Wade testified that at around 5:00 P.M. on July 1, he and Mohr approached the intersection of Springhill Avenue and Towanda, an area known to be the site of extensive drug dealing. Four or five individuals were standing on the corner in front of a convenience store, the Springhill Market. As the officers approached, one of the individuals called out "5-0," a warning that police officers were nearby. Custis went into the Springhill Market, and the officers followed.

Wade testified that he heard a "loud thump" just before he entered the store. As he entered, Custis was coming up from a crouched position between two video machines. Wade ordered Custis to stop and told Mohr, who was entering behind him, to hold Custis. Wade then investigated the area where Custis had been standing and found a .38 caliber Smith & Wesson revolver. The officers then arrested Custis. As he was being arrested, Custis dropped a small bag of cocaine and said "OK, you got it." Wade then looked around the video machines, where he found eighteen additional bags of cocaine. Custis asked Wade for what he was being arrested, and Wade told him that he was being arrested for possessing cocaine and a handgun. According to Wade, Custis responded, "I will take the cocaine charges but I'm not taking the gun charge." Officer Mohr largely corroborated Wade's testimony.

Officer Hopson testified that he interviewed Custis the morning after his arrest. According to Hopson, Custis initially denied that the gun and drugs were his, but he later admitted that the gun was his and that he worked as an "enforcer" for a drug dealer named "Easy." Hopson did not take a written statement from Custis.

Custis testified on his own behalf. He admitted purchasing the one bag of cocaine in his possession when he was arrested, but denied possessing the gun or the remaining eighteen bags of cocaine. Custis claimed that he had dropped the one bag of cocaine and was picking it up when Wade stopped him. Custis acknowledged that he told Wade he would take the drug charge but not the gun charge. Custis claimed, however, that he meant only the one bag of cocaine that he dropped while being arrested. Custis also denied telling Hopson that the gun was his or that he worked as an "enforcer."

The jury found Custis not guilty of possession with intent to distribute and not guilty of use of a firearm during a drug offense, but found him guilty of possession of a firearm and simple possession of cocaine, a lesser included offense of the charge of possession with intent to distribute cocaine.

After trial, but before sentencing, Officers Wade and Mohr were indicted in state court for perjury in securing a search warrant in an unrelated case. That indictment alleged that the officers had falsely stated that a substance suspected to be cocaine had been submitted to the Evidence Control Section of the Baltimore City Police Department for chemical analysis. The evidence had not been submitted until after the warrants had been obtained and executed. Based on this indictment, Custis moved for a new trial. The district court deferred ruling on this motion until the sentencing hearing.

At the sentencing hearing, the government moved to have Custis's sentence enhanced under the Armed Career Criminal Act, 18 U.S.C. § 924(e), based on the prior convictions included in the notice of sentence enhancement. In response, Custis claimed that two of his prior convictions had been unconstitutionally obtained. He argued that his counsel for his 1985 burglary conviction was unconstitutionally ineffective and that his guilty plea was not knowing and intelligent. Custis also alleged that the 1989 conviction violated due process because he was not adequately advised of his rights before entering a plea. Custis further claimed that the 1989 conviction was for attempted breaking and entering rather than attempted burglary and thus was not a violent felony. The district court declined to hear Custis's arguments that two of his prior convictions had been unconstitutionally obtained, and found that all three convictions were for violent felonies, thus making him eligible for the sentence enhancement under section 924(e)(1). *United States v. Custis*, 786 F.Supp. 533, 537 (D.Md.1992).

After determining Custis's sentence, the district court heard his motion for a new trial based on newly discovered evidence. Fed.R.Crim.P. 33. The motion was based on the perjury indictments of Wade and Mohr. Finding that the indictments sufficiently undercut the credibility of those officers so as to justify a new trial, the district court granted Custis's motion. 786 F.Supp. at 538.

Subsequent to the district court's grant of the new trial, however, the state entered

a *nolle prosequi* (equivalent to a dismissal without prejudice) in the Circuit Court of Baltimore City dismissing all charges against Wade and Mohr. The government then filed a motion with the district court to reconsider its grant of a new trial, but because the government had already appealed that motion to this court, the district court concluded that it lacked jurisdiction over the government's motion.

We have before us now the government's appeal of the district court's grant of a new trial and Custis's cross-appeal of his sentence enhancement under section 924(e). We address these questions in turn.

## II.

■ The district court granted Custis's motion for a new trial on the basis of the indictments of Mohr and Wade for perjury in an unrelated case. The standard for granting a new trial is well established in this circuit:

(a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Bales*, 813 F.2d 1289, 1295 (4th Cir.1987) (quoting *Mills v. United States*, 281 F.2d 736, 738 (4th Cir.1960) (citations omitted)). On its face, the evidence offered by Custis fails to meet this standard—it is "merely impeaching." This circuit has emphasized that new evidence going only to the credibility of a witness does not generally warrant the granting of a new trial. *United States v. Stockton*, 788 F.2d 210, 220 (4th Cir.1986) (citing *United States v. Williams*, 415 F.2d 232, 233–34 (4th Cir.1969)).

While we have found no exception in this circuit to the general rule that a motion for a new trial requires a defendant to establish *each* of the five elements, *see United States v. Chavis*, 880 F.2d 788, 793 (4th Cir.1989), we need not rule that there can never be such an exception. There may be an exceptional "rare case" that would justify granting a new trial solely on the basis of newly discovered impeachment evidence. *See United States v. Taglia*, 922 F.2d 413, 415–16 (7th Cir.1991) (noting possible exception, but finding requirements for exception not satisfied). The exceptional circumstances identified by the Seventh Circuit in *Taglia* were, however, quite narrow: "If the government's case rested entirely on the uncorroborated testimony of a single witness who was discovered after trial to be utterly unworthy of being believed because he had lied consistently in a string of previous cases, the district judge would have the power to grant a new trial in order to prevent an innocent person from being convicted." *Id.* at 415. This case does not fall into that narrow category.

■ The state proceeding against Mohr and Wade involved an unrelated case, with issues that had no bearing on those at Custis's trial. Although perjured testimony is a matter of serious concern—and is especially repugnant when committed by an officer of the state—we are not prepared simply to presume these officers guilty of criminal misconduct. The district court made no factual findings concerning the conduct specified in the indictments and admitted that it lacked "detailed knowledge of either the factual basis of the indictments or whether the charges are well-grounded in fact." 786 F.Supp. at 538 n. 4. The charges against the officers thus remain mere allegations, inadmissible under Fed.R.Evid. 609, *see United States v. Dennis*, 625 F.2d 782, 798 (8th Cir.1980), although defendant contends the underlying circumstances might prove to be admissible during cross-examination under Fed. R.Evid. 608(b). *See United States v. Leake*, 642 F.2d 715, 718–19 (4th Cir.1981).[1] In addition, all of the charges against the officers were dismissed after this appeal was taken, a factor which came too late for the district court to consider because it lacked jurisdiction. We are thus confronted on appeal with charges that are both unproven and unconnected to this case. It would not be appropriate to set aside the jury's verdict on such a basis.

---

1. The admissibility of this evidence seems problematic. There has never been any allegation

in the unrelated case that the officers tampered with the evidence, failed to submit that evidence

The Second Circuit has emphasized that motions for a new trial based on impeaching evidence discovered after trial should be granted "only with great caution and in the most extraordinary circumstances." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir.1992) (citation omitted). In order to grant such a motion, "[t]here must be a real concern that an innocent person may have been convicted." *Id.* (footnote omitted). Such a concern is not present here. The testimony of Officer Hopson, who was not named in the indictments, is illustrative. His testimony recounting Custis's confession strongly supported the testimony of Wade and Mohr—and the jury's conclusion that Custis possessed the gun. In addition, Custis's own testimony of the events at the Springhill Market was largely consistent with that of the officers. Custis admitted that he had gone into the store with the cocaine, that he was crouched down picking up the cocaine when Officer Wade stopped him, that Officer Wade searched behind the video machines after stopping him, and that he told the officers that he would take the drug charge but not the gun charge. He differed with the officers only on the ultimate question of whether he possessed the gun and the eighteen bags of cocaine. The jury acquitted Custis of the intent to distribute charge, leaving only the question of the possession of the gun. The officers and Custis essentially agreed on the sequence of events leading up to Custis's arrest, and Custis's proximity to where the gun was found. Given these facts, we cannot say that the indictment was the sort of new evidence that "would probably produce an acquittal." *See Bales*, 813 F.2d at 1295. We conclude, therefore, that Custis has not established an exception to the general rule that the subsequent discovery of impeaching evidence does not justify a new trial.

## III.

The district court enhanced Custis's sentence for his section 922(g) conviction under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), because it found that he had three prior violent felony convictions. Custis claims that the district court erred when it refused to consider the constitutional validity of the challenged predicate convictions, one of which he claims was obtained in violation of his right to effective assistance of counsel, *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and two of which he claims were obtained without a knowing plea of guilt. *See Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

The district court declined to take evidence on the validity of these convictions. Initially, the court reasoned that *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), and *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), held that predicate convictions obtained in violation of the right to counsel recognized in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), cannot be used to enhance a sentence. The court then assured itself that Custis had been represented by counsel in his prior convictions and, thus, that there had been no violation of *Gideon.*

■ The fact that the court acted scrupulously in determining that Custis's right to counsel had been observed, however, did not oblige it to take evidence on Custis's three remaining claims. The *Gideon* violations at issue in *Burgett* and *Tucker* are different in kind from other constitutional errors, including those asserted by Custis here. When a defendant has been deprived of counsel, he has lost his ability to assert all his other constitutional rights, either because he is ignorant of those rights or because he lacks the background and experience to press them effectively. *Johnson*

to the Evidence Control Section, or falsely represented the results of chemical analysis. Rather, the officers were charged with securing the search warrant before submitting the evidence for analysis. If the defendant raised this conduct on cross-examination, the government argues that it would be entitled to show in turn that the misstatements were inadvertent or immaterial, and to offer evidence of the officers'

character. Custis's new trial might thus be sidetracked by a mini-trial on the allegations in the officers' indictment. Admissibility under Rule 608(b) is subject to the balancing test of Rule 403, *see* Fed.R.Evid. 608 advisory committee's note, which requires that the probative value of the evidence not be substantially outweighed by the prospect of confusion or delay.

*v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

Absent counsel, the judicial system has no assurance that the prior conviction reliably establishes the defendant's guilt. *See Linkletter v. Walker,* 381 U.S. 618, 639 n. 20, 85 S.Ct. 1731, 1743 n. 20, 14 L.Ed.2d 601 (1965). Without that reliability, even the federalism concerns that ordinarily counsel deference by federal courts to the judgments of state courts must give way. *See Tucker,* 404 U.S. at 448, 92 S.Ct. at 592. In recognizing the duty of district courts to entertain claims of *Gideon* violations in federal sentencing proceedings, we note that those claims will ordinarily lend themselves to facial review from the state court documents offered by the government to establish the conviction. The corresponding burden on courts and litigants should thus not be a heavy one. *See United States v. Jones,* 977 F.2d 105, 108 (4th Cir.1992) (*Jones II*) (uncounseled state court conviction is "prime example" of one "whose invalidity appears from available state court records.").

The same cannot be said, however, of the other claims pressed by Custis in his sentencing proceeding. Permitting defendants to challenge generally the constitutional validity of predicate convictions would place a substantial burden both on the prosecutors who will be forced to defend the predicate convictions used in sentence enhancement, and on the district judges who will be forced to hear those challenges. In this case, Custis raised no less than three separate constitutional challenges, all of them fact-intensive, to the validity of his prior convictions, which were several years old and which were from the state courts of Maryland. Requiring district courts to entertain such "first instance challenges to prior state convictions" poses a risk of unduly delaying and protracting the entire sentencing process. *Jones II,* 977 F.2d at 108–09. Even when the defendant's constitutional attack has no merit, establishing the validity of convictions that may be both geographically and temporarily distant presents considerable practical difficulties. Many of the challenged predicate convic-

tions will be from state courts, and the procedures of those courts are likely to be unfamiliar to court and counsel. *See Loper v. Beto,* 405 U.S. 473, 500, 92 S.Ct. 1014, 1027, 31 L.Ed.2d 374 (1972) (Rehnquist, J., dissenting). This unfamiliarity will be compounded by the fact that the attorneys of the state that convicted the defendant will not be there to defend that state's procedures. *Jones II,* 977 F.2d at 109. Moreover, the "inadequacy or unavailability of state court records and witnesses" from multiple or far-flung jurisdictions may further complicate the process. *Id.* Beyond these practical difficulties, permitting collateral attacks on predicate state convictions in federal sentencing proceedings impairs the values both of comity and federalism. It is true that in a federal sentencing proceeding the state is not asserting a direct interest in the validity of its conviction, but any "challenge to the validity of a state conviction implicitly questions in at least some part the integrity of the state's judicial process." *United States v. Gaylor,* 828 F.2d 253, 255 (4th Cir.1987). A final judgment of conviction thus commands respect, in whatever forum and for whatever purposes it has come under challenge. The admonition that "[f]ederal courts are not forums in which to relitigate state trials," *Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S.Ct. 3383, 3392, 77 L.Ed.2d 1090 (1983), is not one that is limited to federal habeas corpus proceedings. In federal habeas corpus, Congress has at least provided a forum for the collateral review of state convictions. In federal sentencing proceedings, by contrast, the statutory mandate for reviewing predicate state convictions is far murkier.[2] The application of "the usual constraints on collateral review, such as waiver, bypass, cause, prejudice, and exhaustion" is, as the district court recognized, more problematic, even assuming that the presence of a procedural bar could be readily ascertained and asserted. 786 F.Supp. at 537. Given that federal sentencing proceedings are not the preferred forums for the review of state convictions, we have cautioned district courts that where a defendant has failed to attack his conviction on direct review or in a habeas

**2.** Congress has not specifically directed the federal courts to examine the validity of predicate

convictions in sentencing proceedings. Nothing

corpus proceeding, his "failure to have made the attempt will bespeak a recognized lack of basis for doing so, thus raising in question the basis now claimed for making the attempt in an even more attenuated collateral setting." *Jones II*, 977 F.2d at 109.

█ For these reasons, we think that district courts are obliged to hear constitutional challenges to predicate state convictions in federal sentencing proceedings only when prejudice can be presumed from the alleged constitutional violation, regardless of the facts of the particular case; and when the right asserted is so fundamental that its violation would undercut confidence in the guilt of the defendant. *Cf. Rose v. Clark*, 478 U.S. 570, 577–79, 106 S.Ct. 3101, 3105–07, 92 L.Ed.2d 460 (1986) (citing introduction of coerced confession, complete denial of right to counsel, adjudication by biased judge, and direction of guilty verdict by court as constitutional violations where prejudice can be presumed). *But see Arizona v. Fulminante*, —— U.S. ——, ——–——, 111 S.Ct. 1246, 1263–66, 113 L.Ed.2d 302 (1991) (applying harmless error analysis to introduction of coerced confession).

█ We now apply this test to the district court's resolution of Custis's claims. Custis claims that he was deprived of effective assistance of counsel during the proceedings leading up to his 1985 burglary conviction. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to make out a claim of ineffective assistance of counsel, however, a defendant must show that counsel's errors *prejudiced* his defense, "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064. *See also Perry v. Leeke*, 488 U.S. 272, 278–80, 109 S.Ct. 594, 599–600, 102 L.Ed.2d 624 (1989) (distinguishing *Strickland* claims requiring showing of prejudice from denial of counsel claims in which prejudice is presumed). Finding prejudice from counsel's alleged errors necessarily entails a fact-intensive inquiry, requiring extensive reference to the record in the original state proceeding. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2069 ("[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."). The court in *Jones II* recognized this problem and pointed to ineffective assistance of counsel claims as "notoriously" fact-specific, and "difficult of proof under any circumstances." 977 F.2d at 111.

█ Custis also claims that two of his convictions were obtained without a knowing plea of guilt. *See Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). While prejudice to the defendant

---

in 18 U.S.C. § 3661, which permits federal courts to consider any information concerning "the background, character, and conduct" of a defendant in sentencing, requires courts to entertain constitutional challenges to predicate convictions. *See United States v. Jones*, 907 F.2d 456, 466–67 (4th Cir.1990) (*Jones I*). Moreover, that statute is far less detailed than the federal habeas corpus procedures specified under 28 U.S.C. § 2254.

The Sentencing Guidelines also send conflicting signals on the propriety of entertaining constitutional challenges to predicate convictions. *Compare* U.S.S.G. § 4A1.2, comment. (n. 6) ("[S]entences resulting from convictions that a defendant shows to have been *previously ruled constitutionally invalid* are not to be counted.") (emphasis added) *with* U.S.S.G. § 4A1.2, comment. (backg'd) ("The Commission leaves for court determination the issue of whether a defendant may collaterally attack at sentencing a prior conviction."). Not surprisingly, the courts have reached conflicting results. *Compare United States v. Jakobetz*, 955 F.2d 786, 805 (2d

Cir.1992) (courts have discretion to entertain challenges) *with United States v. Hewitt*, 942 F.2d 1270, 1276 (8th Cir.1991) (sentencing courts may only entertain challenges to already invalidated convictions). Even those courts that have allowed district courts to entertain attacks on predicate convictions have emphasized that they are not required to do so, and that considerations of finality and federalism counsel restraint in doing so. *See United States v. French*, 974 F.2d 687, 701 (6th Cir.1992). Finally, the district court concluded that constitutional challenges to predicate convictions under the Armed Career Criminal Act were precluded by the Supreme Court's decision in *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). In that case, the Court held that collateral challenges were not permitted under the predecessor statute to the substantive offense under which Custis was convicted, 18 U.S.C. § 922(g). Given our disposition of this case, we need not consider the applicability of *Lewis* to Congress's 1984 amendment adding the sentencing enhancement provisions of 18 U.S.C. § 924(e).

can be presumed on direct appeal when the record does not affirmatively demonstrate that the defendant's plea of guilt was knowing, *see id.* at 244, 89 S.Ct. at 1713, this presumption does not carry over when a defendant attacks the intelligence of his plea collaterally. "On collateral review, we think it defies logic to presume from the mere unavailability of a transcript ... that the defendant was not advised of his rights." *Parke v. Raley*, —— U.S. ——, ——, 113 S.Ct. 517, 524, 121 L.Ed.2d 391 (1992). *See also United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) (absent showing of prejudice, Fed.R.Crim.P. 11 violation not cognizable in proceedings under 28 U.S.C. § 2255). When a defendant is represented by counsel when making his guilty plea, that plea is presumed valid when later attacked in a habeas corpus proceeding. *Marshall v. Lonberger*, 459 U.S. 422, 437, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1983). In order to rebut that strong presumption of validity, the defendant must make a factual showing that his plea of guilt was not voluntary and intelligent. The appropriate forum for such a fact-intensive inquiry will typically be a state collateral proceeding or federal habeas corpus, not a sentencing hearing for a separate offense far removed from the original conviction.

■ We conclude, therefore, that the district court did not err in declining to entertain Custis's constitutional challenge to the effectiveness of his counsel and to the validity of his guilty pleas. Those alleged violations did not carry with them the same presumption of prejudice that uncounseled pleas and convictions do. The multiple violations alleged by Custis could only have been established after fact-intensive investigations into state proceedings that are best undertaken in a different setting. Of course, if Custis is successful in making "a state or federal collateral attack upon the state sentence" during a habeas petition, for example, he may seek to revise any federal sentence in which the state conviction "was a factor." *Jones II*, 977 F.2d at 110 (citation omitted). No con-

stitutional or statutory provision, however, obliges a federal sentencing court to entertain such challenges in the first instance.

## IV.

Finally, Custis contends that his 1989 conviction in Maryland for attempted breaking and entering does not qualify as a violent felony for purposes of the sentencing enhancement in 18 U.S.C. § 924(e).[3] Custis contends that under Maryland law, attempted breaking and entering encompasses conduct such as lying in wait or reconnoitering the location of the crime. According to Custis, such conduct does not present "a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), and thus his attempted breaking and entering conviction should not count as a violent felony for sentencing.

■ We disagree. The Supreme Court has instructed that the need for uniform sentencing under section 924(e) requires "a formal categorical approach, looking only to the statutory definition of the prior offenses, and not to the particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600, 110 S.Ct. 2143, 2159, 109 L.Ed.2d 607 (1990). In applying such a categorical approach, we think that courts must necessarily make common-sense judgments about whether a given offense proscribes generic conduct with the potential for serious physical injury to another. The Maryland crime of which Custis was convicted includes as an element that the breaking and entering be into "the dwelling house of another." Md. Ann.Code art. 27, § 31A. *See also Warfield v. State*, 315 Md. 474, 554 A.2d 1238, 1249 (1989) (§ 31A intended to prohibit breaking and entering into "another person's home"). Such a building is likely to be occupied, thus creating a substantial risk of confrontation. *Compare United States v. Headspeth*, 852 F.2d 753, 758–59 (4th Cir.1988) ("storehouse breaking", Md. Ann.Code art. 27, § 32, held not to present a threat by its very nature because crime generally involved unoccupied buildings).

3. While this appeal was pending, the Circuit Court of Baltimore County entered an order deleting from the court file for Custis's 1989 conviction all references to "attempted burglary" and substituting the words "attempted breaking and entering." Custis filed a motion to supplement the record on appeal to reflect this order and we granted Custis's motion on January 22, 1993.

**1364**

In most cases, attempted breaking and entering will be charged when a defendant has been interrupted in the course of illegally entering a home. Interrupting an intruder while breaking into a home involves a risk of confrontation nearly as great as finding him inside the house. *United States v. O'Brien*, 972 F.2d 47, 52 (3d Cir.1992). We hold therefore that attempted breaking and entering "presents a serious potential risk of physical injury to another" and thus constitutes a violent felony for purposes of section 924(e)(2)(B)(ii). *Accord United States v. Payne*, 966 F.2d 4, 8 (1st Cir.1992) ("[R]isk of injury arises, not from the completion of the break-in, but rather from the possibility that some innocent party may appear on the scene while the break-in is occurring."). *See also United States v. Lane*, 909 F.2d 895, 903 (6th Cir.1990) (attempted burglary). *But see United States v. Strahl*, 958 F.2d 980, 986 (10th Cir.1992) (holding that attempted burglary does not qualify as a violent felony for section 924(e)); *United States v. Martinez*, 954 F.2d 1050, 1054 (5th Cir. 1992) (same).

V.

For the reasons given above, the case is remanded to the district court with directions to sentence defendant under 18 U.S.C. § 924(e) as an armed career criminal.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

ORDER

April 6, 1993.

Appellee/cross-appellant's petition for rehearing and suggestion for rehearing en banc were submitted to this Court.

In a requested poll of the Court on the suggestion for rehearing en banc, Chief Judge Ervin and Judges Hall, Phillips, and Murnaghan voted to grant rehearing en banc; and Judges Russell, Widener, Wilkinson, Wilkins, Niemeyer, Hamilton, Luttig, and Williams voted to deny rehearing en banc.

This panel considered the petition for rehearing and is of the opinion that it should be denied. In denying rehearing and affirming the sentence imposed by the district court, the panel does not wish to be construed as condoning the district court's treatment of this circuit's precedent. The district court ruling preceded this circuit's decision in *Jones II* and the district court was thus without the benefit of its guidance. Regrettably, however, in the court of its discussion, the district court attempted improperly to reject the majority opinion in *Jones I*, and to draw upon the dissenting opinion in that case as authority for its position. 786 F.Supp. at 536–37. It should not need to be remarked that it is the opinion of the panel majority that binds and governs district courts within this circuit.

As the panel considered the petition for rehearing and is of the opinion that it should be denied, and as the majority of active circuit judges voted to deny rehearing en banc,

It is ADJUDGED and ORDERED that the petition for rehearing and suggestion for rehearing en banc are denied.

Entered at the direction of Judge Wilkinson, with the concurrence of Judge Russell and Judge Merhige (SUSDJ, ED/VA).