16 F.3d 413
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Oladele Joshua OGUNDE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellant,
v.
Oladele Joshua OGUNDE, Defendant-Appellee.
 No. 93-5232.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 10, 1993.
Decided Feb. 10, 1994.
 
 1
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Herbert N. Maletz, Senior Judge, sitting by designation. (CR-92-63-B)
 
 
 2
 William B. Purpura, Baltimore, MD, for appellant.
 
 
 3
 Barbara Slaymaker Sale, Asst. U.S. Atty., Baltimore, MD, for appellee.
 
 
 4
 Lynn A. Battaglia, U.S. Atty., Debra A. Carr, Asst. U.S. Atty., Baltimore, MD, for appellee.
 
 
 5
 D.Md.
 
 
 6
 AFFIRMED IN PART, AND VACATED AND REMANDED IN PART.
 
 
 7
 Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 OPINION
 WILKINS
 
 8
 Oladele Joshua Ogunde appeals his convictions for conspiring to possess heroin with the intent to distribute, see 21 U.S.C.A. Sec. 846 (West Supp.1993), and for conspiring to import heroin into the United States, see 21 U.S.C.A. Sec. 952(a) (West Supp.1993). He principally contends that his warrantless arrest violated the Fourth Amendment because the arresting officers lacked probable cause. Consequently, he concludes, the district court erred in declining to suppress evidence obtained during the search conducted incident to his arrest. In addition, he maintains that the evidence was insufficient to support his Sec. 952(a) conviction and that the district court erred in refusing to grant his motion for a new trial. The Government cross appeals the refusal of the district court to sentence Ogunde to the ten-year statutory mandatory minimum sentence set forth in 21 U.S.C.A. Sec. 841(b)(1)(A) (West Supp.1993). We affirm Ogunde's convictions, but vacate his sentence and remand for resentencing.
 
 I.
 
 9
 While proceeding through customs after disembarking from a flight from Africa, Alois Coleman was arrested at the Baltimore Washington International Airport with approximately 2.4 kilograms of heroin.
 
 
 10
 Pursuant to her agreement to assist the Government by making a controlled delivery of the heroin, Coleman allowed agents to monitor telephone calls at her apartment. She first received a telephone call from a man with a foreign accent who questioned her about her delay at the airport. Later, a man with a similar accent, subsequently identified as Ogunde, telephoned Coleman and stated that he was coming to her apartment. However, instead of visiting Coleman, Ogunde directed Janice Ford to telephone Coleman to inquire whether "everything was OK."
 
 
 11
 Several days afterward, Coleman received another telephone call from a man with a foreign accent. Threatening her with death if she refused to comply, the caller told Coleman that he knew she had "it" because she had not been arrested and that he and his friend wanted "the package." Coleman told the caller that she wanted the money owed to her as payment for transporting the heroin and that she feared he intended not to pay her.
 
 
 12
 Later that day, Ford arrived at Coleman's apartment, was arrested, and was questioned about her involvement with the heroin. Ford gave agents a piece of paper with a beeper number and the word "Dele" written on it. One of the officers dialed this number and input Coleman's telephone number as the number to which the call should be returned. Within a few minutes, the same male caller who had previously threatened Coleman again telephoned her apartment. The caller spoke with Ford, asking her if she had the package. When Ford responded that she did not, the caller told her to get it and meet him at a gasoline station located near Coleman's apartment. Ford informed the caller that because Coleman wanted to assure payment of her fee, the caller would have to come pick up the package from Coleman. Ford identified the caller as Ogunde and provided a description of him to the officers. She also stated that she expected two black Nigerian men to arrive in a white Volkswagen automobile with either Virginia or New York license plates to pick up the heroin. This information was radioed to agents conducting surveillance of Coleman's apartment.
 
 
 13
 Approximately 25 minutes later, two black men arrived in a red Nissan automobile with Maryland tags and stopped in a parking lot adjacent to Coleman's apartment. After the automobile stopped, the occupants saw agent Fisher, who was conducting surveillance. Fisher testified that Ogunde, who was the passenger, looked surprised when he noticed Fisher. Ogunde asked Fisher for directions to nearby Interstate 495. Fisher provided directions to Ogunde, and the Nissan left the parking lot with Fisher following it. When Fisher noticed that the two men were not following his directions, he drove beside the Nissan, told Ogunde that they were going the wrong way, and explained that if they would follow him, he would lead them to the interstate. While the Nissan was following Fisher, the agents who remained in Coleman's apartment radioed a description of Ogunde to Fisher--that he was wearing a blue and white striped shirt, no tie, close haircut, and no glasses. Fisher immediately recognized this description as fitting the individual who was the passenger in the Nissan. Using his portable blue light, he attempted to stop the Nissan. It did not halt, but after a brief chase, Fisher was able to stop the fleeing vehicle and remove Ogunde from it. The driver of the Nissan fled the scene, but was apprehended nearby. A search of Ogunde incident to his arrest uncovered $2,000 in one hundred dollar bills and a beeper that responded when called using the number previously provided by Ford. A search of the Nissan revealed two briefcases in the back seat. The first contained personal items belonging to Ogunde, approximately $3,000 in cash, and an airline ticket to Africa. The other briefcase, which had the initials "O.O." on it, contained $13,000 in United States currency.
 
 
 14
 Prior to trial, Ogunde moved to suppress this evidence, arguing that police lacked probable cause to arrest him. The district court denied Ogunde's motion, ruling that probable cause existed for Ogunde's arrest. It noted that Ford had provided information concerning Ogunde's involvement in the conspiracy, that Ogunde and his companion arrived at Coleman's apartment complex within minutes of Ford's conversation informing the caller that the heroin would have to be picked up directly by him, and that the actions exhibited by Ogunde and his companion were suspicious. In addition, the court found that Ogunde fit the physical description provided by Ford.
 
 
 15
 At trial, Coleman was unable to testify because she had developed a brain tumor that rendered her incompetent as a witness. Ford, however, did testify for the Government. Not only did she testify to the facts set forth above, but she also detailed her meetings with Ogunde prior to her visit to Coleman's apartment on the day of her arrest, stating that he had directed her actions. Officers who apprehended Coleman and Ogunde and who participated in the surveillance of Coleman's apartment also testified.
 
 
 16
 After his trial, but prior to sentencing, Ogunde moved for a new trial pursuant to Federal Rule of Criminal Procedure 33, alleging that he had discovered evidence which demonstrated that Ford had perjured herself during his trial. He also asserted that the Government had failed to produce exculpatory evidence. The district court conducted an evidentiary hearing and denied the motion. It concluded that the evidence submitted by Ogunde did not demonstrate a reasonable probability that an acquittal would have resulted.
 
 
 17
 Without any objection from the defendant, the district court attributed 2.4 kilograms of heroin to Ogunde. Based on this quantity of heroin, his guideline range was calculated at 97 to 121 months imprisonment. Over the Government's objection that a ten-year statutory mandatory minimum penalty applied, the district court sentenced Ogunde to 97 months imprisonment.
 
 II.
 
 18
 "[A] warrantless arrest is proper for purposes of the Fourth Amendment where the facts and circumstances within the arresting officer's knowledge are sufficient for a reasonable person to believe that a crime has been or is being committed by the person to be arrested." United States v. Miller, 925 F.2d 695, 698 (4th Cir.), cert. denied, 112 S.Ct. 111 (1991). This court has recognized:
 
 
 19
 An informant's tip is rarely adequate on its own to support a finding of probable cause. In assessing whether an officer acting on an informant's tip has probable cause, we look to the "totality of the circumstances" surrounding the information available to the officer. One important factor in determining whether an informant's tip has established probable cause is the degree to which the arresting officer can corroborate that tip. Id. (citations omitted). "Under the 'totality of the circumstances' approach to establishing probable cause, an informant's veracity, reliability, and basis of knowledge are highly relevant, but they are simply factors to be considered in examining the total information available to the arresting officer." Id. at 699; see also United States v. Sinclair, 983 F.2d 598, 601-02 (4th Cir.1993). Ogunde maintains that his warrantless arrest was not supported by probable cause, and accordingly, evidence obtained in the search of his person pursuant to the arrest and in the search of the Nissan were tainted by his illegal arrest and should have been suppressed. We disagree.
 
 
 20
 The totality of the information known to the officers at the time of Ogunde's arrest consisted of information supplied by Ford, observations corroborating the information given by Ford, and observations Fisher made of the Nissan and its occupants. Ford was apparently involved in the drug conspiracy and likely seeking leniency--a forceful impetus to furnish reliable information. Ford informed the officers that two men would be coming to Coleman's apartment to retrieve the heroin. Although she was mistaken about the type of automobile Ogunde and his companion would be driving, the arresting officer was able to verify many of the other details supplied by Ford. For example, Fisher knew that the men in the Nissan were two black males, that they were in the vicinity of Coleman's apartment at the expected time, that Ogunde spoke with a foreign accent, and that his physical description matched that provided by Ford. In addition, Fisher observed the suspicious behavior Ogunde and his companion had exhibited in the parking lot and in failing to follow the directions he provided, as well as their subsequent attempt to flee when he activated his blue light.
 
 
 21
 Ogunde argues that probable cause for his arrest was lacking because Ford decided to assist the officers on the spur of the moment, not after deliberation, and because not all of the details she provided were correct. We do not view the fact that Ford made a hasty decision to assist the officers as having any bearing on the likelihood that she was providing accurate information. Moreover, the fact that not all of the details provided by Ford were correct, while probative, is not dispositive. The totality of information known to the officer was sufficient to support a belief by a reasonable person that a crime had been or was being committed by Ogunde. Thus, Fisher had probable cause for the arrest, and the district court did not err in denying Ogunde's motion to suppress.
 
 III.
 
 22
 The standard a district court must apply in determining the appropriateness of a new trial is clearly established:
 
 
 23
 "(a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal."
 
 
 24
 United States v. Custis, 988 F.2d 1355, 1359 (4th Cir.) (quoting United States v. Bales, 813 F.2d 1289, 1295 (4th Cir.1987)), cert. granted in part, 114 S.Ct. 299 (1993). Further, a new trial is warranted by the failure of the Government to disclose material exculpatory evidence to the defense; evidence is "material" if there is a reasonable probability that if it had been disclosed to the defense the result of the proceedings would have been different. See United States v. Bagley, 473 U.S. 667, 674-82 (1985).
 
 
 25
 Ogunde argues that a new trial was warranted because new evidence demonstrated that Ford perjured herself at trial and because the Government failed to disclose this exculpatory information. Ogunde submitted a recording of a conversation between Ford and Ogunde's brother following Ogunde's trial in which Ford appeared to contradict her trial testimony. In addition, Ogunde offered a letter forwarded by the Government to counsel for Ogunde's codefendant setting forth information relating to Ford's involvement with another Nigerian named "Dino." The materials offered by Ogunde indicated that Ford knew Coleman and Coleman's sister, Murray, were drug couriers, apparently contradicting Ford's denial of such knowledge during her cross-examination. Ford explained this apparent contradiction during the evidentiary hearing on the motion for a new trial by saying that although she knew that Murray "travelled," she did not know what illegal substance was being imported. She also testified that she did not inform the Government of this knowledge until after Ogunde's trial.
 
 
 26
 Ogunde also charges that the Government failed to disclose that the driver of the Nissan had used an alias the initials of which were "O.O." This, he maintains, reasonably supports the conclusion that the second briefcase discovered in the back seat of the Nissan was not Ogunde's as the Government had contended at trial. The Government claims that until it received Ogunde's motion for a new trial it had no knowledge of the use of an alias with the initials"O.O." by the driver of the Nissan.
 
 
 27
 We agree with the district court that this evidence is not sufficient to create a reasonable probability that retrial would result in an acquittal. Even if the jury had concluded that the second briefcase did not belong to Ogunde, other overwhelming evidence of Ogunde's guilt was presented. And, although Ford's testimony was no doubt important to the Government's case, it was corroborated by other compelling evidence. Although the evidence presented by Ogunde would have permitted him to attempt to impeach Ford's credibility, it does not undermine our confidence in the outcome of Ogunde's trial.
 
 IV.
 
 28
 Conceding that the evidence is sufficient to support his conviction for conspiracy to possess with the intent to distribute, Ogunde maintains that there is insufficient evidence to support his conviction for importation of heroin under 21 U.S.C.A. Sec. 952(a). The Government acknowledges that there is no direct evidence that Ogunde participated in the importation, but claims that because Ogunde is liable for the actions of his coconspirators, the evidence is sufficient to sustain his conspiracy to import conviction. See Pinkerton v. United States, 328 U.S. 640, 647 (1946).
 
 
 29
 "The essence of a conspiracy under 21 U.S.C.Sec. 952(a) is an agreement between the defendant and others to import into the United States from any place outside thereof, any controlled substance." United States v. Osgood, 794 F.2d 1087, 1094 (5th Cir.) (internal quotation marks omitted), cert. denied, 479 U.S. 994 (1986). In order to establish a conspiracy to import a controlled substance, the Government must prove "that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it." Id. In addition, it must establish "at least the same degree of criminal intent necessary for the underlying substantive offense." Id. Here, as discussed at length above, there was more than sufficient evidence to demonstrate the existence of a conspiracy to import heroin, that Ogunde knew of the conspiracy, and that Ogunde knowingly and voluntarily joined it with the requisite criminal intent.
 
 V.
 
 30
 The Government cross appeals the refusal of the district court to sentence Ogunde to at least ten years of imprisonment as required by 21 U.S.C.A. Sec. 841(b)(1)(A). Section 841(b)(1)(A) provides in pertinent part, "In the case of a violation ... involving--(i) 1 kilogram or more of a mixture or substance containing a detectible amount of heroin ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years." The presentence report attributed 2.4 kilograms of heroin to Ogunde, and Ogunde offered no objection claiming that this quantity was incorrect. See generally United States v. Irvin, 2 F.3d 72 (4th Cir.1993), petition for cert. filed, No. 93-7103 (U.S. Nov. 15, 1993). Accordingly, the ten-year statutory mandatory minimum sentence clearly applied.
 
 
 31
 After properly calculating Ogunde's base offense level at 32, the district court adjusted this offense level downward by two levels for Ogunde's role in the offense. Combined with Criminal History Category I, Ogunde's resulting guideline range was 97 to 121 months imprisonment. Because the statutory mandatory minimum sentence of Sec. 841(b)(1)(A) applied, however, federal sentencing guidelines designate the ten-year mandatory minimum sentence as the bottom point of the guideline range. See United States Sentencing Commission, Guidelines Manual, Sec. 5G1.1(c) (Nov.1991). Section 5G1.1(c) provides that a "sentence may be imposed at any point within the applicable guideline range, provided that the sentence ... is not less than any statutorily required minimum sentence." Thus, the district court erred in sentencing Ogunde to 97 months imprisonment because the minimum sentence that could be imposed was statutorily set at ten years. Accordingly, we vacate the sentence imposed by the district court and remand for resentencing.*
 
 VI.
 
 32
 In sum, we conclude that probable cause existed for Ogunde's warrantless arrest, that the district court did not abuse its discretion in refusing to grant Ogunde a new trial on the basis of newly discovered evidence, and that sufficient evidence supports Ogunde's conviction for conspiracy to import heroin. Thus, we affirm Ogunde's convictions. However, because we determine that the district court erred in failing to sentence Ogunde in accordance with 21 U.S.C.A. Sec. 841(b)(1)(A), we vacate Ogunde's sentence and remand.
 
 
 33
 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 
 
 
 *
 Ogunde concedes that the district court erred in refusing to sentence him to the statutory minimum penalty. Nevertheless, he maintains that this court should not consider the Government's cross appeal because the brief filed by the Government failed to comply with Federal Rule of Appellate Procedure 28. We are unable to discern any substantive deficiency in the Government's brief, and accordingly deny Ogunde's motion to strike the cross appeal