UNITED STATES of America,
Plaintiff–Appellee,

v.

Craig BRADSHAW, Defendant–Appellant.

No. 92–5470.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 5, 1993.

Decided July 28, 1993.

Beth Mina Farber, Asst. Federal Public Defender, Federal Public Defender's Office, Baltimore, MD, argued (Anthony Gallagher, Acting Federal Public Defender, of counsel), for defendant-appellant.

Jamie M. Bennett, Asst. U.S. Atty., Baltimore, MD, argued (Richard D. Bennett, U.S. Atty., of counsel), for plaintiff-appellee.

Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and WARD, Senior District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Craig Bradshaw appeals from the sentence imposed upon him following his guilty plea to the charge of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). He contends that the district court erred in refusing to entertain his collateral challenge to the constitutional validity of the prior state convictions on which his federal sentencing enhancement was predicated. Applying our recent decision in *United States v. Custis*, 988 F.2d 1355 (4th Cir.1993), we find no error in the district court's refusal to consider Bradshaw's collateral challenges, and accordingly affirm his sentence.

## I

Craig Bradshaw was arrested on December 26, 1990 by a Baltimore City police officer. In February 1991 a grand jury in the District of Maryland returned a four-count indictment against Bradshaw, charging him with the following violations of the narcotics and firearms laws of the United States: (1) conspiracy to distribute and possession with intent to distribute cocaine in violation of 21 U.S.C. § 846; (2) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); (3) use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c); and (4) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g).

Following Bradshaw's entry of a plea of not guilty with respect to all four counts of the indictment, the Government gave notice that it would seek an enhanced penalty for the section 922(g)(1) offense under 18 U.S.C. § 924(e)(1), which provides for a minimum fifteen-year sentence for defendants who have three prior convictions for a violent felony or a serious drug offense. Several months later Bradshaw and the Government entered into a plea agreement providing that Bradshaw would plead guilty to the charge of possession of a firearm by a convicted felon. The parties to the plea agreement consented to a finding that Bradshaw had been convicted of the following four crimes by the State of Maryland in the Circuit Court for Baltimore City prior to his arrest on the federal charges: (1) robbery, on June 8, 1981; (2) daytime housebreaking, on February 9, 1984; (3) housebreaking, on February 9, 1984; and (4) daytime housebreaking, on December 16, 1987. Each of the four convictions were defined as felonies under Maryland law. After the district court accepted Bradshaw's guilty plea pursuant to the plea agreement, his counsel moved the court to determine that the 18 U.S.C. § 924(e)(1) sentencing enhancement should not apply to Bradshaw because both his 1981 robbery conviction and his 1987 daytime housebreaking conviction were constitutionally invalid. The Government opposed Bradshaw's motion.

On June 19, 1992 Bradshaw appeared before the district court for sentencing. The court ruled that Bradshaw could not collaterally attack the constitutionality of his prior state convictions for purposes of the 18 U.S.C. § 924(e)(1) sentencing enhancement without first exhausting any and all state remedies available to challenge their validity. Accordingly, the district court held that Bradshaw was subject to the sentencing enhancement of section 924(e)(1), and sentenced him to 188 months' incarceration and three years of supervised release.

We have now before us Bradshaw's appeal of the district court's refusal to allow him to collaterally challenge the constitutionality of his prior state convictions before applying the section 924(e)(1) sentence enhancement.

## II

The district court enhanced Bradshaw's sentence for his 18 U.S.C. § 922(g) conviction under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), because it found that he had four prior violent felony convictions. Bradshaw now contends that the district court erred when it refused to consider the constitutional validity of two of the predicate convictions, one of which he claims was obtained in violation of his Sixth Amendment right to effective assistance of counsel, *see Strickland v. Washington,* 466 U.S. 668, 688–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984), and one of which he claims was obtained in violation of his Fourteenth Amendment due process right to be tried in a juvenile court. ·

■ In *United States v. Custis,* 988 F.2d 1355 (4th Cir.1993), released some weeks after oral argument in the instant case, this court explained the "test," *id.* at 1362, to be applied by district courts in deciding whether to entertain collateral challenges to the constitutionality of prior state convictions for purposes of the sentencing enhancement of 18 U.S.C. § 924(e)(1):

> [W]e think that district courts are obliged to hear constitutional challenges to predicate state convictions in federal sentencing proceedings *only* when prejudice can be presumed from the alleged constitutional violation, regardless of the facts of the particular case; and when the right assert-

ed is so fundamental that its violation would undercut confidence in the guilt of the defendant.

*Id.* (emphasis added).

■ The court's announcement of this two-pronged analysis was accompanied by citations to *Rose v. Clark,* 478 U.S. 570, 577–79, 106 S.Ct. 3101, 3105–07, 92 L.Ed.2d 460 (1986), and *Arizona v. Fulminante,* 499 U.S. 279, ——, 111 S.Ct. 1246, 1263–66, 113 L.Ed.2d 302 (1991). The citation to *Rose* listed four categories of constitutional violations in which "prejudice can be presumed," *Custis,* 988 F.2d at 1362: (1) coerced confessions; (2) complete denial of the right to counsel; (3) adjudication by a biased judge; and (4) direction of a guilty verdict by the court. The citation to *Fulminante,* introduced by the signal *"[b]ut see,"* emphasizes in parenthetical comment that even coerced confessions are now treated by the Supreme Court as subject to harmless-error analysis on appeal. We believe that the significance of *Custis* 's enunciation of the collateral-challenge "test," subscribed by these two citations, is clarion: district courts conducting federal sentencing proceedings need never entertain collateral challenges to the constitutionality of state-court convictions unless the "prejudice" to be "presumed" from the alleged violation is (1) one of the four categories enumerated in *Rose,* and (2) not subject to the harmless-error standard of review on appeal.

Therefore with respect to constitutional challenges posted against prior state-court convictions, a district court must consider (1) whether prejudice can be "presumed" from the alleged constitutional violation, regardless of the facts, *and,* conjunctively, (2) whether the right asserted is "so fundamental" that its violation would undermine the court's confidence in the defendant's guilt. In conducting this two-part inquiry, district courts cannot "presume prejudice" beyond the four categories of error that *Rose* lists as "necessarily render[ing] a trial unfair." 478 U.S. at 577, 106 S.Ct. at 3106. Within the *Rose* categories, district courts may further restrict collateral challenges to those fundamental errors that have not been subjected to harmless-error analysis by the Supreme

Court or by the published views of this tribunal.

We now apply this analysis to Bradshaw's two assignments of error.

### A

■ Bradshaw attempted to challenge his 1981 robbery conviction in the district court on the following grounds. At the time of his arrest for the robbery, Bradshaw was seventeen years old, and considered a juvenile under Maryland law. *See* Md.Cts. & Jud. Proc.Code Ann. § 3–801(d) (1989 & Supp. 1992). The juvenile courts of Maryland have jurisdiction over minors accused of crime. *See Franklin v. State,* 264 Md. 62, 285 A.2d 616, 616 (1972). The Maryland legislature, however, has created an exception to the jurisdiction of juvenile courts whereby adult criminal courts have jurisdiction over certain crimes committed by juveniles due to the serious nature of the offense. For example, adult criminal courts have jurisdiction over a juvenile charged with committing robbery with a deadly weapon. *See* Md.Cts. & Jud. Proc.Code Ann. § 3–804(e)(4) (1989 & Supp. 1992). The juvenile courts would retain jurisdiction over a juvenile charged with robbery that did not involve the use of a weapon.

■ Bradshaw contends that the robbery which formed the basis for his 1981 conviction did not involve any weapon, and that he pleaded guilty to robbery not involving a weapon. He further argues that the officers who arrested him deliberately committed perjury by stating in their report of the incident that Bradshaw had a knife, in order to manufacture adult criminal court jurisdiction over his case. Accordingly, Bradshaw contends, he was deprived of his right under Maryland law to have his case resolved in juvenile court, and concomitantly stripped of his Fourteenth Amendment right to due process of law.

We now consider these allegations in light of the *Custis* "test." First, can prejudice be presumed from Bradshaw's trial on robbery charges in Maryland's adult criminal court? We think not. Standing trial in one tribunal rather than in another is not one of the four fundamental constitutional errors listed by

the Supreme Court in *Rose*. That a criminal defendant is tried in one state tribunal rather than in another does not give rise to an inherent presumption that the defendant's fundamental right to prove his guilt or innocence has been prejudiced. Moreover, confirming the circumstances upon which Bradshaw's due process claim rests would entail the very "fact sensitive investigations into state proceedings" that *Custis* held are "best undertaken in a different setting," such as a state-court collateral attack upon the state sentence. *Custis*, 988 F.2d at 1363.[1] Indeed, *Custis* does not permit us to consider "the facts of the particular case" in deciding whether prejudice may be presumed. *Id.* at 1362. We therefore cannot presume prejudice from the fact that Bradshaw's 1981 robbery conviction was obtained in an adult criminal court.

Having rejected Bradshaw's first assignment of error by applying the first prong of the *Custis* test, we need not consider the second prong. *Custis* makes clear that "whether the right asserted is so fundamental that its violation would undercut confidence in the guilt of the defendant," *id.*, is an additional hurdle the constitutional errors identified by *Rose* must clear before the defendant may challenge them collaterally. After *Custis*, whether Bradshaw's asserted right to be tried in juvenile court is so fundamental that it undercuts our confidence in Bradshaw's guilt is irrelevant. Although a trial in one of Maryland's juvenile courts would—to be sure—have been quite different in nearly every respect from a trial in adult criminal court,[2] *Custis*'s first prong prevents that fact alone from shaking our confidence in Bradshaw's guilt.

*Custis* compels us to hold that Bradshaw's trial in adult criminal court cannot be the subject of a collateral challenge in his federal sentencing proceeding. His 1981 robbery conviction is, therefore, properly one of the three violent felonies on which the district court may base its application of the 18 U.S.C. § 924(e)(1) sentencing enhancement.

**B**

The grounds on which Bradshaw attempted to challenge the constitutionality of his 1987 daytime housebreaking conviction involved allegations of ineffective assistance of counsel. Bradshaw contended that the police stop-and-search procedure that gave rise to his 1987 arrest violated his Fourth Amendment right to be free from an unreasonable search. Bradshaw argued to the district court that he met his attorney for the first time in the holding cell of the court just before his arraignment on the daytime housebreaking charges. After he described the circumstances of the stop and search, his attorney advised Bradshaw to plead guilty "since it was his word against the police and the plea offer was to two years['] incarceration." Bradshaw now maintains that at no time did he and his attorney discuss potential grounds for a motion to suppress or the possibility of filing such a motion. Accordingly, Bradshaw contends that his Sixth Amendment right to the effective assistance of counsel was violated.

Applying *Custis* to these allegations, we again conclude that Bradshaw has failed to clear the initial, "presumed prejudice" prong of the two-part inquiry described above. Although "complete denial of the right to counsel" in violation of *Gideon v. Wainwright*, 372 U.S. 335, 343–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963), and *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), is one of the four categories of fundamental error cited by *Rose*, Bradshaw does not allege that he was entirely deprived of the right to "have the assis-

---

1. Of course, if Bradshaw is successful in launching a state collateral attack through, for example, a petition for the writ of habeas corpus, he may later seek to revise any federal sentence in which the state conviction "was a factor." *Custis*, 988 F.2d at 1363 (quoting *United States v. Jones*, 977 F.2d 105, 110 (4th Cir.1992)).

2. We observe that juvenile proceedings in Maryland are of a special species designed by the Maryland General Assembly to meet the peculiar problems of the adolescent accused. Juvenile proceedings are not criminal in nature, and a juvenile court does not mete out punishment for crime. Juvenile court judges are charged to think not in terms of guilt, but of the child offender's need for protection and rehabilitation. *See* Md.Cts. & Jud.Proc.Code Ann. § 3–802(a) (1989 & Supp.1992).

tance of counsel for his defence." U.S. Const. amend. VI. Admitting the presence of counsel, he argues instead that his attorney's performance at his arraignment on the 1987 charges was deficient in one respect. Such an allegation plainly does not fall within the four *Rose–Custis* categories. Indeed, *Custis* itself rejected a similar claim on the ground that a defendant, in order to make out an ineffective assistance of counsel claim, must show that counsel's errors prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (holding that defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable"). *Custis* held that prejudice can be presumed only in the complete absence of counsel. By contrast, "[f]inding prejudice from counsel's alleged errors necessarily entails [the] fact-intensive inquiry" *Custis* expressly condemns. *See* 988 F.2d at 1362–63.

We hold that the district court properly refused to entertain Bradshaw's collateral challenge to the constitutionality of his 1987 daytime housebreaking conviction on grounds that his counsel's assistance was ineffective. Therefore, the district court's use of the 1987 conviction to enhance Bradshaw's sentence under 18 U.S.C. § 924(e)(1) was not error.

### III

For the foregoing reasons, Bradshaw's sentence as an armed career criminal under 18 U.S.C. § 924(e)(1) is

*AFFIRMED.*