19 F.3d 1430
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rhonda Kaye Scruggs COOPER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hubert Darius RAKES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Warren Harding COOPER, Jr., a/k/a Mickey, Defendant-Appellant.
 Nos. 92-5893, 92-5894, 92-5102.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 11, 1994.
Decided Apr. 7, 1994.
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. Samuel G. Wilson, District Judge. (CR-92-62-R)
 David Dennis Walker, Salem, Va., for appellant Warren Cooper;
 Barbara Anne Leitner, Miller & Shein, Atlanta, Ga., for appellant Rhonda Cooper;
 Jonathan Mitcalfe Apgar, Damico & Apgar, Roanoke, Va., for appellant Rakes.
 Joseph William Hooge Mott, Asst. U.S. Atty., Roanoke, Va., for appellee.
 On Brief: Marcia G. Shein, Miller & Shein, Atlanta, Ga., for appellant Rhonda Cooper.
 Robert P. Crouch, Jr., U.S. Atty., Roanoke, Va., for appellee.
 W.D.Va.
 AFFIRMED IN NOS. 92-5893, 92-5894 AND AFFIRMED IN PART AND REMANDED 92-5102.
 Before RUSSELL and WILLIAMS, Circuit Judges, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Rhonda Kaye Scruggs Cooper, Hubert Darius Rakes and Warren Harding Cooper, Jr. appeal their convictions and sentences following a jury trial on a 30-count superseding indictment charging them and others with various drug-related crimes. The indictment charged Rhonda Cooper in four counts, Rakes in four counts and Warren Cooper in 23 counts. The jury found the defendants guilty of the following: (1) Rhonda Cooper guilty of conspiracy to possess with intent to distribute cocaine and to distribute cocaine, amphetamine and methamphetamine, in violation of 21 U.S.C. Sec. 846 (Count 1), and distribution of amphetamine, in violation of 21 U.S.C.Sec. 841(a)(1) (Count 19); (2) Rakes guilty of three counts of distribution of methamphetamine, in violation of 21 U.S.C. Sec. 841(a)(1) (Counts 22 through 24); and (3) Warren Cooper guilty of 14 counts, including conspiracy to possess with intent to distribute cocaine and to distribute cocaine, amphetamine and methamphetamine, in violation of 21 U.S.C. Sec. 846 (Count 1); engaging in a continuing criminal enterprise, in violation of 21 U.S.C. Sec. 848 (Count 2); distribution of cocaine by a person at least 18 years old to a person under 21, in violation of 21 U.S.C. Sec. 859 (Counts 3 through 6); and distribution of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) (Counts 11 and 12).[1] The district court sentenced Rhonda Cooper to 109 months of imprisonment, sentenced Rakes as a career offender to 262 months of imprisonment and sentenced Warren Cooper to life imprisonment plus 60 months.
 
 
 2
 We find error in Warren Cooper's conviction of both conspiracy and engaging in a continuing criminal enterprise because the former is a lesser included offense of the latter. Accordingly, we remand his case to the district court for vacation of either the conspiracy conviction or the continuing criminal enterprise conviction at the election of the government. Because the grounds for reversal raised by the defendants are otherwise without merit, we affirm the convictions in all other respects.
 
 
 3
 Each defendant raises various bases for reversal, which we address in the order presented in their appeals. The facts will be presented as they become relevant.
 
 I.
 RHONDA COOPER
 
 4
 Rhonda Cooper contends that: (1) her Sixth Amendment right to effective assistance of counsel was violated due to substantially deficient performances of counsel during pretrial proceedings and (2) the trial court erred in allowing the government to introduce evidence of cocaine which was not related to any of the counts charged against her in the indictment.
 
 1. Ineffective Assistance of Counsel
 
 5
 Cooper contends that her counsel was deficient for two reasons. First, Cooper states that counsel improperly failed to challenge Count 1 (conspiracy) of the indictment as duplicitous in that it charged two or more separate offenses. She contends that because Count 1 mentioned three different drugs along with different overt acts (i.e., distribution and possession with intent to distribute) attributable to numerous defendants jointly and severally, there is more than a reasonable probability that the jury was overwhelmed and confused as to who was guilty of what.
 
 
 6
 We find this argument to be without merit. In order to show ineffective assistance of counsel, Cooper must show that (1) her counsel's representation fell below an objective standard of reasonableness and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Cooper has not met this test.
 
 
 7
 The indictment charged one offense, a conspiracy, albeit to commit four drug offenses. "A single conspiracy exists where there is 'one overall agreement,'... or 'one general business venture.' " United States v. Leavis, 853 F.2d 215, 218 (4th Cir.1988). Because the indictment alleged a single conspiracy, which the jury found existed, the indictment was not duplicitous; therefore, Cooper's counsel was not deficient in failing to object to it.
 
 
 8
 Cooper also alleges that her counsel was deficient in failing to move for a severance of her trial from that of her codefendants. The court may grant a severance if it appears that a defendant is prejudiced by a joinder of offenses or defendants. Fed.R.Crim.P. 14. Barring special circumstances, however, defendants indicted together should be tried together. United States v. Brugman, 655 F.2d 540, 542 (4th Cir.1981). Here, Cooper contends that she was prejudiced by a joint trial because the majority of the counts and the overt acts mentioned dealt with her husband and codefendant, Warren Cooper. Her acts, she contends, consisted primarily of accompanying her husband on trips and living with him. Thus, she argues, that the jury improperly considered her as "one" with the codefendant. This argument, however, is unconvincing. Cooper offers no evidence of such improper considerations beyond the objective fact that she and her husband were codefendants. For example, she points to no improper argument by counsel for the government. Therefore, Cooper's conviction will not be reversed on this ground.
 
 
 9
 Furthermore, Cooper contends that had her trial been severed, testimony from her husband could have exonerated her on the conspiracy charge. Where the motion for severance is based on the asserted need for a codefendant's testimony, the moving defendant must establish, inter alia, "a reasonable probability ... that the proffered testimony would, in fact materialize and that the codefendant would have waived [his] Fifth Amendment right at a separate trial...." United States v. Parodi, 703 F.2d 768, 779 (4th Cir.1983). In addition, the exculpatory nature and effect of the testimony must establish that the moving defendant will be unable to obtain a fair trial without severance, not merely that a separate trial would offer her a better chance of acquittal. Id. at 780. Cooper contends that she could have made these showings had a motion been raised by trial counsel.
 
 
 10
 Cooper, however, ignores the trial testimony. Warren Cooper testified at great length at the trial in an effort to exonerate himself, his wife and every other co-defendant. Furthermore, Rhonda Cooper testified on her own behalf as well as other coconspirators. All who testified attempted to exonerate themselves and their co-defendants, and there were no conflicting defenses. Furthermore, Cooper was acquitted of Count 21 (distribution of cocaine) while her husband was found guilty, a fact which belies her contention that the jury could not distinguish between her and her husband. Therefore, we find that Cooper has not carried her burden of showing that her counsel's failure to move for a severance caused the representation to fall below an objective standard of reasonableness nor has she shown a reasonable probability of a different outcome had counsel asked for and received a severance. In fact, in light of the evidence, it is highly questionable whether counsel would have received a severance had he asked for one.
 
 
 11
 2. Improper Introduction of Cocaine Evidence
 
 
 12
 Rhonda Cooper next contends that the district court abused its discretion by allowing the government to introduce evidence regarding 33.24 grams of cocaine that was seized in a search of the Cooper's residence on November 12, 1985 and that Cooper contends was unrelated to any counts in the indictment. Pursuant to this seizure, Warren Cooper was charged in 1985 with possession of cocaine. Rhonda Cooper contends that this evidence was offered only to prove her character in order to show action in conformity with that character, in violation of Fed.R.Evid. 404(b). However, Cooper's trial counsel objected and the district court ruled on the basis of a violation of Fed.R.Evid. 403 (exclusion of relevant evidence whose probative value is substantially outweighed by its prejudicial effect). Thus, this Court will assess the evidence based on the objection made in the district court.
 
 
 13
 Warren Cooper's November 1985 state charge for possession of cocaine was dismissed. Furthermore, the defense introduced evidence at trial that showed that the cocaine was found in a loft area of Warren and Rhonda Cooper's house, but that they occupied the downstairs bedroom and another person was living in the loft area and a fourth person was storing property in that area. Therefore, Rhonda Cooper contends that no evidence existed that she or her husband were involved in a conspiracy to distribute or possess cocaine (or to distribute amphetamine or methamphetamine) during or prior to November 1985, as charged in the indictment. Thus, Cooper contends, the cocaine was both irrelevant and highly prejudicial and should have been excluded.
 
 
 14
 The district court admitted the cocaine evidence based on the court's assumption that the government would produce additional circumstantial evidence that would date the conspiracy back to 1985. The government produced two witnesses, Jeffrey Jones and Teresa Shelton, who testified that Warren Cooper and/or Rhonda Cooper were involved in drugs in 1985 or earlier.[2] Cooper contends, however, that the government never fulfilled the district court's expectation because the two governmental witnesses were unreliable drug users and dealers.
 
 
 15
 We find that the trial judge did not abuse his discretion in allowing the evidence. The decision whether to admit evidence under Rule 403 is one left to the sound discretion of the trial court and will not be upset except under "the most extraordinary of circumstances, where that discretion has been plainly abused." United States v. Simpson, 910 F.2d 154, 157 (4th Cir.1990) (citations omitted). Such abuse occurs only when it can be said that the trial court acted arbitrarily or irrationally in admitting evidence. Id. Based on this standard, the defendant's contention must fail.
 
 II.
 HUBERT RAKES
 
 16
 Rakes contends that: (1) the imposition of enhanced punishment as a career offender was unsupported by the evidence and (2) the evidence was insufficient to sustain his convictions.
 
 1. Enhanced Punishment as Career Offender
 
 17
 Rakes received an enhanced punishment as a career offender based on five prior convictions for the sale of marijuana. A defendant may be sentenced as a career offender if: (1) the defendant was at least 18 years old at the time of the instant offense; (2) the instant offense is a felony that is a controlled substance offense; and (3) the defendant has at least two prior felony convictions of a controlled substance offense. See U.S.S.G. Sec. 4B1.1.[3] A controlled substance offense is "an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance...." U.S.S.G. Sec. 4B1.2(2).
 
 
 18
 Rakes contends that the district court's enhancement of his sentence under the above provisions was improper because marijuana was removed from the Virginia controlled substance schedules and penalized by separate statute in a recodification effective on July 1, 1980. See Va.Code Ann. Sec. 18.2-248.1. Only one of Rakes' marijuana distribution charges predated the Virginia statutory amendment.
 
 
 19
 We find this contention to be without merit. Cf. United States v. Pinckney, 938 F.2d 519 (4th Cir.1991) (holding that federal definition of a felony adopted by the Sentencing Commission was controlling where charge of possession with intent to distribute marijuana was a misdemeanor under state law).
 
 2. Sufficiency of the Evidence
 
 20
 Rakes contends that the only evidence offered to convict him was the testimony of Ricky Haley, whose testimony was unreliable. Haley testified that he bought crank from Rakes at least twice a week in 1989, but Rakes was incarcerated throughout that year. Therefore, Rakes concludes that the jury was required to believe this inherently incredible testimony and to take the word of a perjurer that Rakes ever sold Haley crank.
 
 
 21
 Rakes' three convictions for distribution of methamphetamine were based on sales he made to Haley, who was an informant working with the state police. On all three occasions, Haley was accompanied by special agent Diane Mandeville. On the first occasion, Mandeville accompanied Haley into Rakes' trailer. On the other two, she waited outside for a few minutes while Haley purchased the drugs and then returned and relinquished them to her. Furthermore, Haley testified that he bought drugs from Rakes "around ninety" or "eighty-nine, ninety," though he later conceded that he could not remember the dates. Viewing this evidence in the light most favorable to the government, it cannot be said that no rational trier of fact could have found the elements of the offenses beyond a reasonable doubt. Therefore, the Court must uphold the convictions. Jackson v. Virginia, 443 U.S. 307 (1979).
 
 III.
 WARREN COOPER
 
 22
 Warren Cooper assigns the following errors to the trial court: (1) relying on his prior record to impose a mandatory life sentence; (2) allowing the government to introduce cocaine that was unrelated to the counts charged against him in the indictment; (3) ruling that sufficient evidence existed to convict him of Count 2; (4) ruling that sufficient evidence existed to convict him of Counts 3 through 6, 11 and 12; and (5) upholding his convictions of Counts 1 and 2 where conspiracy is a lesser included offense of conducting a continuing criminal enterprise.
 
 
 23
 1. Trial Court's Reliance on Defendant's Prior Record to Impose Life Sentence
 
 
 24
 Cooper contends that two prior felony convictions, which triggered his mandatory life sentence, were based on unconstitutional factors including his failure to knowingly and intelligently enter a plea. Therefore, he concludes that these convictions could not be used to enhance his sentence. Furthermore, Cooper contends that the application of a mandatory life sentence, without consideration of aggravating and mitigating circumstances, constitutes cruel and unusual punishment in violation of the Eighth Amendment.
 
 
 25
 Specifically, Cooper points out that Dr. Avrum Weiss, an expert on Post-Traumatic Stress Disorder, testified that the defendant was suffering from that disorder, which impaired his ability to make an intelligent plea. Thus, Cooper calls into question the adequacy of the inquiry into his mental condition made by the courts that accepted his prior guilty pleas. With respect to the Eighth Amendment issue, Cooper contends that he acquired his drug problem in Vietnam, where he was given amphetamines by a superior officer to help him stay awake, and that Vietnam atrocities caused the mental condition from which he now suffers.
 
 
 26
 We find Cooper's contentions to be without merit.
 
 
 27
 [D]istrict courts are obliged to hear constitutional challenges to predicate state convictions in federal sentencing proceedings only when prejudice can be presumed from the alleged constitutional violation, regardless of the facts of the particular case; and when the right asserted is so fundamental that its violation would undercut confidence in the guilt of the defendant.
 
 
 28
 United States v. Curtis, 988 F.2d 1355, 1362 (4th Cir.1993). We think that district court review of Cooper's prior convictions was unwarranted based on this test.
 
 
 29
 [T]he significance of Curtis 's enunciation of the collateral-challenge "test," ... is clarion: district courts conducting federal sentencing proceedings need never entertain collateral challenges to the constitutionality of state-court convictions unless the "prejudice to be "presumed" from the alleged violation is (1) one of the four categories enumerated in Rose [ v. Clark, 478 U.S. 570, 577-79 (1986) ], and (2) not subject to the harmless-error standard of review on appeal.
 
 
 30
 United States v. Bradshaw, 999 F.2d 798, 800 (4th Cir.1993). In Rose, the Supreme Court listed the following categories of constitutional violations in which prejudice can be presumed: (1) coerced confessions; (2) complete denial of the right to counsel; (3) adjudication by a biased judge; and (4) direction of a guilty verdict by the court. 478 U.S. at 577-78. The violation complained of by Cooper fits none of these categories; therefore, the district court need not have entertained his collateral attacks on prior convictions.
 
 
 31
 Furthermore, we find that the district judge exercised informed discretion in finding that Cooper's prior pleas were voluntary. See United States v. Jones, 977 F.2d 105, 109 (4th Cir.1992), cert. denied, 113 S.Ct. 1335 (1993). To support his claim, Cooper presented the testimony of Dr. Weiss but introduced no transcripts of the prior proceedings or any other evidence contemporaneous with the hearings. The district judge disregarded Dr. Weiss' testimony, finding as a matter of fact that Cooper's anti-social behavior well pre-dated his military service and that Cooper's pleas were voluntarily made. Thus, we conclude that the district court acted well within its power in finding that Cooper failed to carry his burden of showing the invalidity of the prior convictions.
 
 
 32
 2. Propriety of Introduction of Cocaine Evidence
 
 
 33
 Cooper's argument with respect to the introduction of evidence regarding cocaine seized in a search of his residence in 1985 is identical to an argument made by his wife, and we reject it for the reasons stated in response to his wife's contentions.
 
 
 34
 3. Sufficiency of Evidence to Convict Defendant on Count 2
 
 
 35
 Count 2 charged Warren Cooper with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. Sec. 848. Conviction of this offense requires that the government prove that: (1) the defendant committed a felony violation of the federal drug laws; (2) the violation was part of a continuing series of violations of the drug laws; (3) the series of violations were undertaken by the defendant in concert with five or more other persons with respect to whom the defendant occupied a position of organizer, supervisor or any other position of management; and (4) the defendant obtained substantial income or resources from the continuing series of violations. 21 U.S.C. Sec. 848(c); United States v. Ricks, 882 F.2d 885, 890-91 (4th Cir.1989). Cooper challenges the sufficiency of the evidence to sustain this conviction with respect to the last two elements, asserting that the evidence failed to show that he occupied a supervisory position in relation to at least five other individuals or that he obtained substantial income or resources.
 
 
 36
 We find, however, that the evidence, viewed in the light most favorable to the government, see United States v. Butler, 885 F.2d 195, 200 (4th Cir.1989), established at a minimum that the defendant either organized, supervised or managed his wife, and at least four others in a drug distribution ring operated out of his home and the Charity Store, which he and his wife owned.[4] The government adduced the following evidence: James Arnold Martin was Cooper's assistant during 1990 and 1991. He stored and delivered cocaine and collected money for the drugs. Teresa Perdue Shelton lived in Cooper's home from sometime in 1987 until November 1990. During that time, at Cooper's direction, Shelton retrieved drugs from Cooper's hiding places, delivered them to his customers and collected the money. Bobby Joe Prillaman assisted Cooper by picking up, paying for, weighing, packaging and transporting amphetamine from Frank Paul Setliff, a coconspirator, usually an ounce two to three times per week. He also made trips to meet George Dalphus Browning, Jr., a coconspirator, in furtherance of Cooper's narcotics dealing. Larry Dudley transported cocaine and returned the money to the seller, usually Browning. Finally, Cooper himself stated in a taped conversation on February 1, 1991 that he had been letting his wife handle most of the crank. This evidence was sufficient to establish that Cooper was a principal in a drug distribution organization in which he managed or supervised at least five others. This is all that was required. See Ricks, 882 F.2d at 891. Therefore, based on this evidence, it cannot be said that no rational trier of fact could have found beyond a reasonable doubt that Cooper was an organizer, supervisor or manager.
 
 
 37
 We also find that the government put forth sufficient evidence to establish that Cooper derived substantial income or resources from engaging in the drug enterprise. For example, the government's evidence showed that Cooper had no legitimate income. Nevertheless, in a telephone conversation on March 20, 1991 in which Cooper discussed with his brother the purchase of some property costing $500,000, Cooper stated, "We might have half that much" and that Johnny Metz, a banker in Rocky Mount, would "give me the other half." Furthermore, Cooper stated that Cat Nichols was interested in one of the parcels but "[h]e ain't got as much money as I do." Therefore, we find that the evidence of Cooper's substantial narcotics dealing in addition to Cooper's own statements concerning the money he had constituted enough evidence for a rational juror to conclude beyond a reasonable doubt that Cooper obtained substantial income and resources from his unlawful activities.
 
 
 38
 4. Sufficiency of Evidence to Convict Defendant on Counts 3 through 6, 11 and 12
 
 
 39
 Counts 3 through 6 charged Cooper with distribution of cocaine to a person under 21 on or about November 29, 1989, December 20, 1989, January 3, 1990 and January 24, 1990, respectively, in violation of 21 U.S.C. Sec. 859, and refer to sales to Ronald Campbell. Counts 11 and 12 charged him with distribution of cocaine on or about November 29, 1989 and December 5, 1989, respectively, in violation of 21 U.S.C. Sec. 841(a)(1), and refer to sales to Patrick Bowman. Cooper challenges the sufficiency of the evidence to sustain these convictions due to the insufficiency of proof as to the dates of the offenses.
 
 
 40
 With respect to Counts 3 through 6, Campbell testified that he obtained cocaine every Friday and Wednesday from Cooper and that all the cocaine he sold at Paul's Barbecue came from Cooper. Campbell sold cocaine to Deputy Jerry Fielder on four dates, one Wednesday and three Thursdays.[5] Based on Campbell's buying habits, the government charged Cooper with selling to Campbell on the preceding Wednesdays for the Thursday sales to Fielder and with selling to Campbell on the same day as the Wednesday sale to Fielder. We find that the jury was entitled to conclude that Cooper provided cocaine to Campbell on or about each of the dates alleged in the indictment.
 
 
 41
 With respect to Counts 11 and 12, Bowman testified that he bought an eighth of an ounce of cocaine every two to three to four days from Cooper. Bowman made two sales to Fielder, and Cooper is charged in the indictment with selling to Bowman on these dates. Given Bowman's buying habits, the jury was entitled to infer that Cooper provided the cocaine to Bowman on or about the dates that Bowman sold to Fielder.
 
 5. Lesser Included Offense
 
 42
 Cooper contends, and the government concedes, that he could not be convicted of both a conspiracy and conducting a continuing criminal enterprise because conspiracy is a lesser included offense of conducting a criminal enterprise, and the same evidence was used in support of both convictions. Therefore, we remand the case to the district court for vacation of either conviction at the election of the United States.
 
 IV.
 
 43
 We find defendants' various claims, except with respect to Warren Cooper's conviction of both conspiracy and engaging in a continuing criminal enterprise, to be without merit. Accordingly, we remand Warren Cooper's case to the district court for vacation of either Count 1 or Count 2, and in all other respects, affirm the convictions.
 
 AFFIRMED IN PART AND REMANDED IN PART
 
 
 [1]
 Warren Cooper's remaining counts of conviction involved the distribution of cocaine, amphetamine and methamphetamine, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2, and use of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c)
 
 
 [2]
 The district court struck Counts 8 through 10, for which Jones testified. The defendants contend that the district court took this action because Jones' testimony was unbelievable, but the government disagrees. We find it unnecessary to resolve this conflict
 
 
 [3]
 The guidelines in effect at the time of sentencing were the 1992 guidelines, but the career offender guideline has not been changed since that time
 
 
 [4]
 These four were James Arnold Martin, Teresa Purdue Shelton, Bobby Joe Prillaman and Larry Dudley. Though Cooper contends that one of the people whom he allegedly supervised, Darryl Reed Dixon, was acquitted and that the court struck the evidence against another individual, Jeffrey Jones, based on its lack of credibility, this still leaves at least five others who were under Cooper's supervision
 
 
 [5]
 Fielder purchased cocaine from Campbell on November 29, 1989 (Wednesday), December 21, 1989, January 4, 1990 and January 25, 1990 (Thursdays)