53 F.3d 329
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Bernard GRIER, a/k/a Naughty Cat, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
R.B. BOYD, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry Wayne GALLOWAY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry Wayne GALLOWAY, Defendant-Appellant.
 Nos. 93-5210, 93-5315, 93-5453, 94-5216.
 United States Court of Appeals, Fourth Circuit.
 Argued: January 31, 1995.
Decided: May 9, 1995.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, Senior District Judge. (CR-92-30-P, CR-93-43-P)
 Before WIDENER, WILKINS, and WILLIAMS, Circuit Judges.
 ARGUED: James H. Wade, Charlotte, NC, for Appellant Grier; Jesse James Waldon, Jr., Charlotte, NC, for Appellant Boyd; Michael Smith Scofield, Charlotte, NC, for Appellant Galloway. Thomas Gray Walker, Assistant United States Attorney, Kenneth Davis Bell, Assistant United States Attorney, Charlotte, NC, for Appellee. ON BRIEF: Mark T. Calloway, United States Attorney, David C. Keesler, Assistant United States Attorney, Charlotte, NC, for Appellee.
 OPINION
 PER CURIAM:
 
 
 1
 Bernard Grier, R.B. Boyd, and Larry W. Galloway appeal their convictions on a number of charges relating to a large-scale cocaine trafficking conspiracy in Charlotte, North Carolina. Galloway also appeals his sentence. Finding no reversible error, we affirm.
 
 I.
 
 2
 On February 6, 1992, a grand jury for the Western District of North Carolina returned an indictment against eighteen individuals, including Appellants, charging various crimes relating to a drug conspiracy lasting from 1987 through 1992. Count 1 charged all three Appellants with taking part in an unlawful conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 846. Additionally, Count 19 charged Grier with using a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c)(1). Boyd was charged with money laundering in Counts 12 and 13, in violation of 18 U.S.C. Sec. 1956(a)(1)(A), and filing false tax returns in Counts 14 through 16, in violation of 26 U.S.C. Sec. 7206(1).
 
 
 3
 At trial, the Government's theory of prosecution essentially was that each of the Appellants participated in a large-scale conspiracy revolving around an individual named Terry Duncan. Appellants do not challenge the testimony of a number of witnesses that Duncan was an important figure in the trafficking of cocaine in Charlotte. Duncan, himself, testified that at the most productive point in running his operation, he was responsible for the sale of between 10 to 12 kilograms of cocaine per month.
 
 
 4
 On November 20, 1992, the jury returned guilty verdicts on all charges against Grier and Galloway, while finding Boyd not guilty on one count of money laundering but guilty on the remaining charges. On January 22, 1993, the district court sentenced Boyd to 192 months imprisonment. On January 25, 1993, the court sentenced Grier to consecutive terms of 252 months on the drug conviction and 60 months on the firearm conviction. Finally, on May 17, 1993, the district court sentenced Galloway to 240 months imprisonment.
 
 
 5
 Grier, Boyd, and Galloway filed timely appeals from their convictions and sentences. They essentially make five arguments on appeal. First, Grier contends that the district court erred in admitting hearsay statements of a deceased witness in violation of his Sixth Amendment rights. Second, all Appellants challenge the sufficiency of the evidence to support their conspiracy convictions. Third, all Appellants maintain that their conspiracy convictions must be reversed because the evidence presented at trial constituted an unacceptable variance from the charge under which they were indicted in Count 1 of the indictment. Fourth, Galloway argues that the district court committed reversible error in denying his motion for a new trial based on recanted testimony of a material witness, newly discovered evidence of perjury by certain trial witnesses, and the Government's failure to provide certain Brady materials. Fifth, Galloway argues that the district court committed clear error in calculating the amount of cocaine attributable to him as a member of the conspiracy. We address, in turn, each of the arguments raised by Appellants.
 
 II.
 
 6
 Grier first argues that the district court committed reversible error when it admitted into evidence a statement given by a deceased coconspirator, John Devoe, to prove that Grier used a handgun in the course of a drug transaction, in violation of 18 U.S.C. Sec. 924(c)(1). Specifically, Devoe's statement implicated Grier in the use of a firearm to murder an individual named Jamaica Mike during the course and in furtherance of the drug conspiracy. Before trial, the Government moved for the admission of the statement made by Devoe in the form of hand-written notes taken by Agent Blowers at the time of the meeting with Devoe and separately summarized in a subsequent FBI 302 report. The Government made clear to the district court its intention to use this statement against Grier with respect to both counts alleged against him: Count 1 for conspiracy to possess with intent to sell cocaine and Count 19 for use of a weapon during the course of a drug trafficking crime. Grier opposed the motion on the ground that admission of the statement would violate the Confrontation Clause of the Constitution.
 
 
 7
 The district court granted the Government's motion, reasoning that the admissibility of Devoe's statement would not violate the Confrontation Clause because the statement possessed sufficient indications of reliability and trustworthiness as required under Idaho v. Wright, 497 U.S. 805, 813-15 (1990). See also United States v. Ellis, 951 F.2d 580, 582-83 (4th Cir.1991), cert. denied, 112 S.Ct. 3030 (1992). Wright makes clear that the Confrontation Clause permits the Government to admit hearsay evidence when a hearsay declarant is unavailable to testify if the evidence possesses certain indicia of reliability. Id. at 814-15. The Government may establish the reliability of the hearsay testimony by showing the testimony either falls within a firmly rooted hearsay exception or bears "particularized guarantees of trustworthiness." Id. The district court based its conclusion that the statement possessed particularized guarantees of trustworthiness on the following findings: (1) Devoe made his statement in the presence of his attorney after having been encouraged by the attorney to speak fully and truthfully; (2) Devoe was aware that he would be immunized for his statement which incriminated him and that, accordingly, it would be unlikely that state charges would be brought against him; (3) at the time he gave the statement, Devoe was in a terminal stage of AIDS and death was imminent, making it less likely that Devoe would have an incentive to lie; and, (4) Agent Blowers reviewed notes that he made concerning Devoe's statement with Devoe and informed him that his statement was subject to further investigation to verify its truthfulness. Grier disagrees with the district court, arguing that there were insufficient guarantees of trustworthiness as to Devoe's identification of Grier through the use of a nickname.
 
 
 8
 We need not resolve the issue whether the statement contained sufficient indicia of reliability because we conclude that, even if admission of the statement was in error, it was harmless. See Delaware v. Arsdall, 475 U.S. 673, 681-84 (1986) (harmless error analysis applicable to testimony admitted over defendant's valid Confrontation Clause objection); United States v. Aulicino, 44 F.3d 1102, 1109 (2d Cir.1995) (discussing Arsdall considerations of the strength of the properly-admitted evidence against defendant and whether the improperly-admitted testimony was cumulative). As to the evidence concerning the murder of Jamaica Mike, Emery Bradley--an admitted high-level conspirator in the drug organization--testified extensively about the events surrounding the incident and, specifically, that Grier admitted after the incident that he had committed the murder. See Wright, 497 U.S. at 823 (while "the use of corroborating evidence to support a hearsay statement's 'particularized guarantees of trustworthiness' " would be "at odds" with the Confrontation Clause, "the presence of corroborating evidence more appropriately indicates that any error in admitting the statement might be harmless"). Due to inconsistencies with prior statements to the police, Bradley faced extensive cross-examination about his testimony concerning the murder. The Government also offered forensic evidence and testimony from an investigating officer named Tom Ledford of Jamaica Mike's murder that generally corroborated some details of Bradley's testimony concerning the murder. Moreover, there was overwhelming evidence from testimony of other witnesses describing multiple other instances in which Grier used a firearm in furtherance of the drug conspiracy. Melvin Coffey, a hired look-out for the organization, testified that while performing his job he witnessed Grier repeatedly use a gun as the enforcer for the organization. Coffey testified as to various incidents in which Grier fired a nine millimeter semi-automatic weapon at persons in cars attempting to flee without paying for drugs purchased, and specifically about one instance in which a shot fired by Grier struck a car forcing it into a ditch. Robert Morris (an admitted courier for Duncan) and Emery Bradley both also testified to having seen Grier on the street carrying a nine millimeter weapon in the course of conducting business. Accordingly, even were we to find the admission of Devoe's statement to be in violation of the Confrontation Clause, we conclude that the error was harmless because overwhelming evidence in the record establishes beyond a reasonable doubt that, even if the district court erred in admitting Devoe's statement, the jury would have convicted Grier of using a gun in furtherance of the drug conspiracy.*
 
 III.
 
 9
 Appellants next challenge the sufficiency of the evidence to support their individual convictions under Count 1, charging the three with taking part in an unlawful conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 846. As is often the case with a challenge to a cocaine conspiracy conviction involving allegations of a large scale drug conspiracy, Appellants essentially make two arguments about the evidence presented at trial: (1) the evidence was insufficient to prove that the charged single conspiracy existed, and instead showed that there were at least three separate conspiracies; and (2) even if only one conspiracy existed, the evidence was insufficient to show each individual's participation in that conspiracy. We have held that even though these two issues are conceptually distinct, "they are so intertwined in the required evidentiary assessment that we approach them" in a singular, combined fashion. United States v. Banks, 10 F.3d 1044, 1051 (4th Cir.1993), cert. denied, 114 S.Ct. 2681, and 114 S.Ct. 1850 (1994).
 
 
 10
 Whether there is a single conspiracy or multiple conspiracies, as well as an agreement to participate in the conspiracy, is a question of fact for the jury and we must affirm its finding of a single conspiracy "unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury so to find."
 
 
 11
 United States v. Harris, 39 F.3d 1262, 1267 (4th Cir.1994) (quoting United States v. Urbanik, 801 F.2d 692, 695 (4th Cir.1986)). A single conspiracy involving a large-scale drug operation is typically proven through the presentation of circumstantial evidence and "can often be inferred from the totality of circumstances shown by the Government." Harris, 39 F.3d at 1267 (citing United States v. Mabry, 953 F.2d 127, 130 (4th Cir.1991), cert. denied, 112 S.Ct. 1951 (1992); United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991)).
 
 
 12
 Appellants initially maintain that the evidence demonstrated not one cocaine conspiracy under Terry Duncan, but three independent conspiracies headed by Duncan, Ned Johnson, and Emery Bradley. As discussed earlier, a single conspiracy exists where there is "one general business venture," United States v. Leavis, 853 F.2d 215, 218 (4th Cir.1988), which need not have a "discrete, identifiable organizational structure" and can be linked merely by a "mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." Banks, 10 F.3d at 1054.
 
 
 13
 We conclude from the record that there is sufficient circumstantial evidence from which the jury could conclude that there was a single conspiracy headed by Terry Duncan with multiple transactions back and forth between various operatives in the organization. For example, the evidence strongly supports a connection between Emery Bradley and Terry Duncan. Bradley himself testified about repeated purchases of cocaine from Duncan that he subsequently turned around and sold, in part, to others like Galloway. Additional evidence concerned transactions tying together various members of the conspiracy, such as testimony about repeated purchases by Boyd for distribution both from Ned Johnson and from Duncan. All of this evidence together showed not simple buyer-seller relationships, but a vast cocaine trafficking network requiring many participants with various levels of responsibility. In short, we cannot say from this record that the evidence was not sufficient for a reasonable jury to conclude beyond a reasonable doubt that there was a single conspiracy as alleged in the indictment.
 
 
 14
 We next review each Appellant's respective argument that, even if a single conspiracy existed, there was insufficient evidence from which a reasonable jury could find that he was a member. We conclude that there is sufficient evidence to support each of the conspiracy convictions.
 
 
 15
 Even without considering Devoe's statement, there was overwhelming evidence from which a reasonable jury could convict Grier on the conspiracy count for his role as an enforcer for the drug organization. The Government presented the testimony of Emery "Big E" Bradley, an admitted drug dealer with ties to Duncan. Bradley testified that he hired Grier as an enforcer or "gun man" to protect various aspects of the drug organization. (J.A. 577-78.) According to Bradley, Grier did not sell drugs on the street for him, but instead would be placed at a point of repeated sales and would watch for dealers and clear out any buyers who caused troubles for the dealers. Although Bradley, as well as many of the other Government witnesses, certainly faced credibility problems with his extended history as a drug dealer, credibility is a quintessential question for the jury and is not for us to weigh on appeal. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982).
 
 
 16
 There was also ample evidence to support the conviction of Boyd. The Government presented evidence that Boyd served as a lowerlevel dealer in the organization. Terry Duncan, for example, testified that on four occasions he sold cocaine to Boyd in kilogram quantities through an intermediary named Debbie. Furthermore, he testified that on one occasion he delivered a kilogram of cocaine to Boyd without the use of an intermediary. James Duncan testified that while he was working for Terry Duncan, he delivered one kilogram of cocaine to Boyd. Willie Walker testified that while he was working for Terry Duncan, he delivered as much as three hundred fifty to four hundred kilograms of cocaine to Boyd on behalf of Duncan. Ned Johnson, a higher-level drug dealer, testified that over approximately a three-year period he purchased cocaine from Boyd at a rate of one or two kilograms per week. Gloria Holloway testified that she paid money to Boyd in exchange for the cocaine Boyd delivered to Johnson between five and ten times.
 
 
 17
 As to Galloway's role in the conspiracy, the Government presented evidence that he also served as a lower-level dealer for the organization. Terry Duncan testified that he delivered a total of four kilograms of cocaine to Galloway over an extended period of time. Bradley testified that he had sold cocaine to Galloway on numerous occasions from larger amounts of cocaine that Bradley had earlier purchased from Terry Duncan. Robert Morris, essentially a delivery man for Bradley, testified that he had delivered cocaine to Galloway for Bradley more than ten times. Willie Witherspoon, also a member of the organization, further implicated Galloway not only as a seller of cocaine, but also as a buyer, testifying that he had obtained cocaine from Galloway one or two times per week over an extended period of time. This evidence provides an ample basis from which the jury could convict Galloway.
 
 
 18
 Accordingly, for the foregoing reasons, we conclude that the evidence was sufficient to prove that a single conspiracy existed as charged and that the evidence was sufficient to show each individual's participation in that conspiracy.
 
 IV.
 
 19
 Appellants also argue that there was an impermissible variance between the indictment and the proof at trial because the indictment alleged only one conspiracy yet three conspiracies were shown at the trial. Because we concluded in Section III that the jury had sufficient evidence from which to conclude that there was one conspiracy, as opposed to three conspiracies, we need not address this same argument again under this slightly different label.
 
 V.
 
 20
 On May 21, 1993, four days after his sentencing hearing, Galloway filed a motion in which he asserted three reasons for which the district court should grant a new trial. First, Galloway contends that a material witness at trial recanted testimony. Second, Galloway contends that there was newly discovered evidence of perjury committed by other trial witnesses. Third, Galloway contends that the Government failed to produce certain Brady evidence. The district court held an evidentiary hearing and, by order of March 7, 1994, denied the motion. Galloway appeals as to each of the three bases.
 
 
 21
 First, Galloway argues that a material witness recanted his testimony given at trial and that this warrants a new trial. Specifically, Galloway contends that Robert Morris, a witness at the trial who testified concerning hand-to-hand transactions with Galloway, came to Galloway's counsel after the trial and stated that the testimony he had given against Galloway was false. After hearing testimony from Morris and another witness, as well as taking oral argument, the district court denied the motion for new trial as to this issue, finding that Morris, in fact, had not recanted his testimony. For the reasons stated in the district court's written order denying a new trial on this issue, we affirm.
 
 
 22
 Second, Galloway argues that there was newly discovered evidence of perjury committed at trial by John Rowe and Willie Witherspoon. Both Rowe and Witherspoon offered testimony at trial about drug transactions involving Galloway. In United States v. Custis, 988 F.2d 1355, 1359 (4th Cir.1993), we set out the five requirements for granting a new trial based upon newly discovered evidence: (1) the evidence must be, in fact, newly discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and, (5) it must be such, and of such nature, that on a new trial the newly discovered evidence would probably produce an acquittal. We review the denial of a motion for new trial under an abuse of discretion standard. United States v. Arrington, 757 F.2d 1484, 1486 (4th Cir.1985).
 
 
 23
 As to his allegations that Rowe committed perjury, Galloway relies upon the testimony of Wanda Williams. Williams testified that she received a phone call from a man who identified himself as John Rowe and stated that he was going to lie during Galloway's trial at the direction of Emery Bradley. The caller further stated, according to Williams, that Bradley directed him to testify falsely because Bradley, as a government witness, told the caller that he would receive a reduced sentence from the Government as a result. However, Williams also admitted to the following: (1) she was the mother of two children fathered by co-defendant Grier; (2) she harbored ill feelings toward the Government because of Grier's conviction; and (3) she had never met or spoken to Rowe before the time of the alleged phone call. We agree with the district court that Williams's testimony is not sufficient to warrant a new trial under Custis because it would not "probably produce an acquittal." 988 F.2d at 1359. At best, the testimony would call into question Rowe's credibility, which Custis also makes clear is not enough to warrant a new trial. Id. Accordingly, we conclude that the district court committed no error in denying the motion for new trial concerning possible perjury from Rowe.
 
 
 24
 Galloway's allegation that Willie Witherspoon committed perjury fares no better. In support of his contention, Galloway relies on the testimony of Kenneth Witherspoon, Willie Witherspoon's brother, given at the evidentiary hearing before the district court. At the evidentiary hearing, Kenneth Witherspoon testified that while he, Willie, Emery Bradley, Brian Latta, and Lewis Latta were together in a holding cell in the federal courthouse, Bradley told Willie that if he would testify against Galloway, the Government would reduce his sentence. Kenneth Witherspoon further testified that he knew everyone in the cocaine trafficking conspiracy and did not know of any involvement by Galloway. The district court denied the motion for new trial under Custis because, although Kenneth Witherspoon's testimony was potentially impeaching against Willie Witherspoon's testimony, it would not "probably" have resulted in acquittal for Galloway. We agree. There is nothing in the record to indicate, given the overwhelming evidence put forward by other witnesses implicating Gallo way in the conspiracy, that the testimony of Kenneth Witherspoon would "probably" result in an acquittal.
 
 
 25
 Third, Galloway contends that the district court committed reversible error in failing to grant him a new trial due to the Government's failure to provide certain materials pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972). Specifically, Galloway points to the Government's failure to disclose a motion it filed to revoke the bond of Emery Bradley for illegal possession of firearms. Without this information Galloway maintains that he was not able effectively to impeach Bradley's testimony. The Government concedes that it failed to provide Galloway with a copy of the motion, but takes the position that it was an oversight and does not warrant a new trial.
 
 
 26
 In discussing disclosure requirements in Giglio, the Supreme Court was careful to note that "[w]e do not [ ] automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict.' " Giglio, 405 U.S. at 154. Such a nondisclosure only requires a new trial "if it deprives the defendant of a fair trial" and "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." United States v. Bagley, 473 U.S. 667, 678 (1985).
 
 
 27
 We agree with the district court that in this case, while the information might have been helpful in conducting the cross-examination of Bradley, it would not likely have affected the judgment of the jury. Counsel for defendants subjected Bradley to extended crossexamination which revealed, among other things, that Bradley had a favorable plea agreement and an extensive criminal record. Given the extended impeachment of Bradley along the same general themes as would have been provided by the use of the motion to revoke bond, we cannot conclude that the district court abused its discretion in denying the motion for new trial as to the Brady materials.
 
 VI.
 
 28
 Finally, Galloway maintains that the district court erred in calculating the amount of cocaine attributable to him under the sentencing guidelines. See United States Sentencing Guidelines, Secs. 1B1.3, 2D1.1. (Nov.1992) The Presentence Investigation Report (PSR) calculated the amount of cocaine attributable to Galloway to be between three and one-half and five kilograms, which would result in an offense level calculation of 30. The Government objected, taking the position that the amount of cocaine attributable to Galloway should be between five and fifteen kilograms, which would result in an offense level calculation of 32. Galloway made no objection to the PSR calculation but opposed the Government's objection. On appeal, Galloway maintains that the district court erred in finding the Government's assessment accurate because the drugs attributed to him at sentencing were not "reasonably foreseeable" to him in the course of the conspiracy.
 
 
 29
 In determining the offense level of a defendant in a cocaine conspiracy, the district court must base its calculation on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. Sec. 1B1.3(a)(1)(B). We have made clear that the district court is "to determine the quantity of narcotics reasonably foreseeable to each coconspirator within the scope of his agreement." United States v. Irvin, 2 F.3d 72, 78 (4th Cir.1993) (discussing application of Pinkerton v. United States, 328 U.S. 640 (1946) under U.S.S.G. Sec. 1B1.3), cert. denied, 114 S.Ct. 1086 (1994). The Government bears the burden of proving, by a preponderance of the evidence, the amount of cocaine attributable to Galloway. United States v. McManus, 23 F.3d 878, 885 (4th Cir.1994). Because the district court's determination of the quantity of cocaine attributable to Galloway is factual in nature, it is reviewed by this Court for clear error. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir.1990).
 
 
 30
 The evidence presented below indicates no clear error in the district court's calculation. The Government presented the following evidence. Terry Duncan testified at trial that he alone delivered four kilograms of cocaine to Galloway. Emery Bradley testified further that he provided Galloway with between three and five ounces of cocaine per week for approximately two years--or over twenty kilograms of cocaine. After being reminded of this testimony at the sentencing hearing, the district court concluded that the Government's calculation better reflected the evidence than the PSR. We agree.
 
 VII.
 
 31
 Accordingly, for the reasons stated above, the district court did not commit reversible error as to any of Appellants' convictions or sentences and the district court's judgment is affirmed.
 
 AFFIRMED
 
 
 *
 Furthermore, to the extent that the Government used Devoe's statement to prove Grier's participation in the conspiracy (Count 1), we also hold that any error in admitting the statement was harmless as there was overwhelming evidence supporting Grier's role in the conspiracy. See Section III, infra