**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ROBERT ILONIA, a/k/a David Blake,

No. 96-4210

a/k/a William Walsh, a/k/a
Christopher Maple, a/k/a Robert N.
Illoanya,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Chief District Judge.
(CR-95-374-A)

Submitted: January 31, 1997

Decided: October 15, 1997

Before WIDENER, WILKINS, and NIEMEYER, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

Konstantinos Alexakis, Alexandria, Virginia, for Appellant. Helen F.
Fahey, United States Attorney, Gerald J. Smagala, Assistant United
States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Robert Ilonia was convicted by a jury of conspiracy to commit access device fraud, 18 U.S.C. §§ 1029(b)(2), 2 (1994), and fraudulent possession of more than fifteen unauthorized access devices, 18 U.S.C. §§ 1029(a)(3), 2 (1994). Ilonia appeals his conviction, alleging that his indictment was obtained with perjured testimony in denial of due process and that the district court erred in failing to dismiss the indictment after he filed a post-trial motion seeking acquittal or a new trial. He also appeals his 24-month sentence. We affirm the conviction but vacate the sentence and remand for resentencing.

Ilonia was one of several men who negotiated with a confidential informant to buy stolen credit cards in northern Virginia in the spring of 1995. The informant arranged to sell credit cards which were supposedly stolen from the mail but in fact had been specially issued by three banks in fictitious names. Initially, the informant knew Ilonia only as "Robert." On May 4, 1995, Ilonia called the informant to say that he was on his way to the informant's apartment to buy credit cards, as previously arranged. He left his pager number. Federal agents from the United States Postal Inspection Service later subpoenaed the records of the pager company and thus learned Ilonia's name and address.

When Ilonia and co-defendant Mark Johnson arrived at the informant's apartment, they were recorded on videotape (though the tape was not of high quality) and audiotape. The apartment was also monitored visually by agents stationed in an adjoining apartment. Ilonia and Johnson bought about thirty credit cards which were still in envelopes. Before they left, a person who was a suspect in a separate investigation arrived to buy credit cards from the informant.

Ilonia and Johnson left the apartment building and got into a grey four-door sedan. To avoid alerting the other suspect, the agents

2

attempted to arrest Ilonia and Johnson a few blocks away from the apartment building. However, Ilonia escaped after a high-speed chase during which the envelopes containing the credit cards were thrown from the passenger side of the sedan, and one of the agents' vehicles collided with the sedan. Ilonia's fingerprints were found on two of the envelopes thrown from the car. The same evening, one of the agents involved in the chase told Postal Inspector Joseph Costello (the agent in charge) that the vehicle driven by the suspects appeared to be a Volkswagen Jetta.

On July 10, 1995, the informant contacted Costello to give him the license number of Ilonia's car. Costello traced the car, which turned out to be a 1984 Peugeot registered to Ilonia on May 25, 1995. In late July, Ilonia was arrested by state authorities for a traffic offense and his car was impounded. Costello inspected the Peugeot on July 27 and found no evidence of collision damage.

When Costello testified before a grand jury in August, he said that he identified Ilonia through his pager records. He also said that on May 4, 1995, Ilonia was driving a 1984 Peugeot registered to him. When asked how Ilonia was positively identified, Costello said Ilonia had been arrested and fingerprinted on the Fairfax County traffic warrant, and that his fingerprints matched those found on two of the envelopes thrown from the car.

At trial, the prosecutor asked Costello about his previous testimony that he knew the type of car driven by Ilonia on May 4, 1995. Costello explained that he did not learn that a 1984 Peugeot was registered in Ilonia's name until later but that, when he did, he assumed it was the car he saw on May 4. Ilonia was positively identified as the person who bought credit cards from the informant on May 4 by Costello and the informant. The video and audio tapes were played for the jury.

In his cross-examination of Costello, defense counsel asked about his statement to the grand jury that Ilonia was driving a Peugeot on May 4. Costello said he had wrongly assumed that the car he saw on May 4 was the Peugeot, thinking that the car might have carried a different license plate on May 4 and that the damage might have been fixed before he inspected Ilonia's car in July. Defense counsel then tried to suggest that Costello had mistakenly connected Ilonia to the

3

May 4 transaction through the Peugeot. However, Costello reaffirmed that he had first identified Ilonia through his pager number.

After Ilonia was convicted, he moved for a judgment of acquittal or a new trial under Federal Rules of Criminal Procedure 29(c), 12(f) and 33, alleging that Costello had given material perjured testimony before the grand jury when he said Ilonia was driving a Peugeot on May 4. He argued that the government had an obligation to seek a new indictment on untainted testimony when it learned of the perjury. The district court denied the motion.

At sentencing, the district court awarded Ilonia a 2-level enhancement for more than minimal planning under USSG § 2F1.1(b)(2). Ilonia also received a 4-level enhancement under USSG § 2F1.1(b)(4)(A); the court found that the offense involved the conscious or reckless risk of serious bodily injury. Ilonia's argument on this issue focused on whether the government had proved that he was in the car that was pursued by the agents on May 4, 1995.

On appeal, Ilonia first argues that the district court should have dismissed the indictment because of Costello's perjured testimony before the grand jury. While Ilonia did not specifically ask the district court to dismiss the indictment in his post-trial motion for acquittal or a new trial, he did rely on United States v. Basurto, 497 F.2d 781, 785 (9th Cir. 1974), which found error in the denial of a pretrial motion to dismiss an indictment obtained with material perjured testimony.

An indictment returned by a legally constituted grand jury may not be challenged on the ground of inadequate or incompetent evidence, Costello v. United States, 350 U.S. 359, 363 (1956), and may not be dismissed for errors in the grand jury proceedings* which do not prejudice the defendant. Bank of Nova Scotia v. United States, 487 U.S. 250, 257 (1988). However, an indictment may be challenged on the grounds of constitutional error and prosecutorial misconduct. United States v. Mills, 995 F.2d 480, 486 (4th Cir. 1993).

_____

*An exception is an allegation that the indictment fails to show jurisdiction or to charge an offense. Fed. R. Crim. P. 12(b)(2).

4

The government argues that Ilonia has waived this issue by failing to raise it in a pretrial motion. See Fed. R. Crim. P. 12(b)(2), (f). However, an exception exists for a defendant who shows cause for his failure to timely raise a defense or objection based on a defect in the indictment and also shows that he has been prejudiced by the alleged defect. Shotwell Mfg. Co. v. United States, 371 U.S. 341, 362-63 (1963). The decision to grant relief from the waiver provision is within the discretion of the district court. United States v. Williams, 544 F.2d 1215, 1217 (4th Cir. 1976). Thus, Ilonia was not absolutely precluded from challenging his indictment after trial on the ground that it was obtained with perjured testimony if, as alleged, he did not know until the trial that Costello would admit under oath that his testimony before the grand jury was not accurate.

Nevertheless, even assuming that Ilonia had cause for raising the issue after trial, he was not prejudiced by Costello's erroneous grand jury testimony that on May 4, 1995, the suspects arrived at the informant's apartment and left in a 1984 Peugeot. This testimony was not material to a finding of probable cause to indict Ilonia. Costello told the grand jury that Ilonia was identified through his pager number and his fingerprints, which were on two of the envelopes thrown from the car during the chase. Moreover, Ilonia has not shown that Costello perjured himself. Therefore, the district court did not abuse its discretion in denying Ilonia's motion under Rule 12(f).

A new trial may be granted on the basis of newly discovered evidence under Rule 33 if (1) the evidence is newly discovered; (2) the defendant has exercised due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence would probably result in an acquittal at a new trial. All five requirements must be met. United States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 1993), aff'd, 510 U.S. 485 (1994). A new trial should be granted only when the evidence weighs so heavily against the verdict that it would be unjust to enter judgment. United States v. Arrington, 757 F.2d 1484, 1485-86 (4th Cir. 1985). Ilonia's newly discovered evidence (that Costello gave inaccurate testimony before the grand jury) was not material and would not have resulted in an acquittal at a new trial. Therefore, the district court did not err in denying a new trial.

5

Again citing Basurto, Ilonia asks this court to reverse his conviction because there may be a possibility that Costello's inaccurate grand jury testimony contributed to his conviction. There is no merit in his claim because the petit jury was informed of the discrepancy between Costello's grand jury testimony and his trial testimony during his direct examination by the government attorney. Defense counsel also explored the matter extensively in cross-examination. The jury was not misled at trial by any false or mistaken testimony given by Postal Inspector Costello.

Ilonia also contests his sentencing enhancements. Because the government concedes that the 4-level enhancement for risk of bodily injury under USSG § 2F1.1(b)(4)(A) was error and requests resentencing, suggesting that a 2-level adjustment under USSG § 3C1.2 for reckless endangerment would have been appropriate, we vacate this portion of the sentence and remand for the district court to consider whether an adjustment under USSG § 3C1.2 is warranted. We express no opinion concerning the adjustment or the propriety of a departure. The district court's finding that Ilonia engaged in more than minimal planning is not clearly erroneous. The 2-level enhancement under USSG § 2F1.1(b)(2) is therefore affirmed.

Accordingly, we affirm Ilonia's conviction and the district court's order denying him a new trial. We affirm the sentence in part but remand for resentencing without the enhancement under USSG § 2F1.1(b)(4)(A). We express no opinion on the propriety of an enhancement under USSG § 3C1.2 or a departure. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART, VACATED
IN PART, AND REMANDED

6